In re PACOR, INC.

No. 89–8584.

United States District Court, E.D. Pennsylvania.

Feb. 9, 1990.

David Zalesne, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for claimants.

Henry J. Donner, Richard H. Lowe, Jacoby Donner & Jacoby, Philadelphia, Pa., for debtors.

Charles M. Golden, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for committee of asbestos related deceased claimants.

Rosetta Packer, Klehr, Harrison, Harvey, Branzburg, Ellers & Weir, Philadelphia, Pa., for official creditors' committee.

Professor Walter J. Taggert, Villanova, Pa., Guardian Ad Litem, Michael Bloom, Morgan, Lewis & Bockius, Philadelphia, Pa., for Guardian Ad Litem.

## MEMORANDUM

GILES, District Judge.

Appeal is taken by the Carey Canada, Inc. and Celotex Corp. (Appellants) from a final order of the bankruptcy court administering a Chapter 11 proceeding. Jurisdiction is founded upon 28 U.S.C. § 158.

The sole question presented is one of law. Therefore, the district court's review is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 101–03 (3d Cir.1981).

Appellants each filed a proof of claim for contribution for future claims for which they are or may be jointly and severally liable with the Appellee (Debtor) for asbestos-related claims. The bankruptcy court below disallowed those proofs pursuant to 11 U.S.C. § 502(e)(1)(B). Section 502 provides, in pertinent part:

(e)(1) Notwithstanding subsections (a) and (b) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that—

(A) such creditor's claim against the estate is disallowed;

(B) such claim for reimbursement or contribution is contingent as of the time of allowance of such claim for reimbursement or contribution; or

(C) such entity requests subrogation under section 509 of this title to the rights of such creditor.

The question here presented is whether appellants' claims for contribution are contingent within the meaning of § 502(e)(1)(B).

Appellants argue that their status as *potential* joint tortfeasors removes their claims from § 502(e) treatment altogether. They argue that § 502(e)(1)(B) is not applicable because, by its terms, it applies to claims for which the debtor is already liable and their claims are for liability that has yet to be determined. For the reasons which follow, appellants' position is rejected.

All parties agree that a great liability potential exists from future personal injury suits seeking recovery for asbestos exposure. In addition, there are significant property damage suits where national class actions have been certified.

Since debtor's plan of reorganization provides for a trust to satisfy future claims, appellants believe that their potential liability claims should also be covered within the trust.

Appellants assert that § 502(e) covers the prepetition case where joint and several liability has been determined, but that the section should not apply where the claimant had not yet satisfied such a judgment and a claim for contribution is made. Acknowledging that no case law supports their position, appellants urge this court to rule that future liability, which may accrue from events occurring prior to filing of a case, does not fall under § 502(e).

Essentially, appellants are attempting to distinguish themselves, as potential future contributors, from the status of sureties or guarantors. Their argument rests on the notion that co-debtors, sureties and guarantors are "liable with the Debtor", but that this phrase found in § 502(e) does not include contributors whose liability has not been determined.

Appellees argue that appellants have not met, and cannot meet, their burden of persuasion as to the validity and amount of future asbestos claims. Because liability has yet to be determined, no claim amount exists. They cite many cases to support the proposition that undetermined post-petition liability is not allowable pursuant to § 502(e)(1)(B). *See, In re Baldwin–United Corp.*, 55 B.R. 885 (Bankr.S.D.Oh.1985); *In re Wedtech Corp.*, 85 B.R. 285 (Bankr.S.D. N.Y.1988) (*Wedtech* I); *In re Wedtech Corp.*, 87 B.R. 279 (Bankr.S.D.N.Y.1988) (*Wedtech* II); *In re Provincetown Boston Airlines, Inc.*, 72 B.R. 307 (Bankr.M.D.Fla. 1987).

In *Baldwin*, broker-dealers sold a certain type of deferred annuity on behalf of Baldwin, an insurance company. After Baldwin was brought into involuntary bankruptcy proceedings under Chapter 11, purchasers of the annuities brought suit against the broker-dealers. The purchasers did not sue Baldwin because the bankruptcy action stayed such suits. The broker-dealers in turn filed proofs of claims against Baldwin. They argued that § 502(e)(1) only disallows a claimant's contractual obligations with the debtor. The court found that, since liability remained undetermined, the claims were contingent and disallowed under § 502(e)(1)(B).

The *Baldwin* court, therefore, specifically rejected the very argument appellants make in this action. Yet, they argue that the court's analysis is irreconcilable with its conclusion, again attempting to distinguish a contributor from a co-debtor. The statute itself makes no reference to the meaning of "entity liable with the debtor." However, as the *Baldwin* court points out, the legislative history states that "Subsection (e) ... requires disallowance of the claim for reimbursement or contribution of a codebtor, surety or guarantor of an obligation of the debtor." House Report 95–595, 95th Cong., 1st Sess., 354 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6310. *Baldwin*, 55 B.R. at 894. Ultimately, the question for the *Baldwin* court was the proper meaning of "co-debtor." The court found that the meaning of co-debtor implies more than one who is liable by virtue of pre-petition contractual obligations.

Here, appellants argue that the *Baldwin* court failed to distinguish between co-debtors that were liable prior to the filing of bankruptcy and those who become liable after the filing of bankruptcy. Appellants intimate that the co-debtor relationship is distinct from joint-tortfeasor liability determined post-petition.

No logical reason exists to distinguish co-debtors from joint tortfeasors. The provision lists co-debtors, guarantors and sureties to name those who are secondarily liable for debt with the debtor. Joint and several liability is not substantively different from co-debtor, guarantor or surety relationships. A liability is joint and several where a creditor can seek payment from any or all of the debtors. Once one party

pays the debt that party may seek contribution from the other co-debtor(s). A co-debtor relationship may or may not be created by a contract. Thus, the important basis for determining whether a claim is contingent is not how the co-debtor relationship arose or even when it arose, but rather whether debt owing is provable.

"[S]ection 502(e)(1)(B) ... disallows any claim made by the surety or person secondarily liable with the debtor of any claim for reimbursement or contribution to the extent that that claim is contingent as of the time of allowance or disallowance. A claim of a surety is contingent, in this context, until the surety pays the principal creditor." 3 Collier on Bankruptcy ¶ 502.05[1].

■■■ No payment can be made to a principal creditor by one secondarily liable until liability has been determined. Contractual liability simply nullifies the need for judicial determination of such liability. Classification of a liability as pre-petition or post-petition does not alter the requirement that the liability be paid by the secondary debtor or co-debtor before payment may be sought from the debtor in bankruptcy.

Section 502(e)(2) allows a person secondarily liable to a creditor, who pays the debt after the primary debtor files in bankruptcy, to be treated as though payment were made prior to the primary debtor's bankruptcy action. Section 502(e)(2) provides:

(2) A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this subsection, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

Therefore, the secondary debtor is not foreclosed from seeking contribution or indemnification from the primary debtor in bankruptcy due to the disallowance of the contingent claims. "To the extent that the creditor held a pre-petition claim [paid] after the petition by the surety or person secondarily liable with the debtor, that surety's claim is not elevated to a priority status but enjoys the status of the creditor's claim, i.e., a claim existing at the date of the filing of the petition and entitled to share in the debtor's assets to the extent allowable pursuant to the distributive scheme of the Code". 3 Collier on Bankruptcy ¶ 502.05[1].

In attempting to distinguish contingency as to payment from contingency as to liability, appellants demonstrate the weakness in their argument. Appellants argue that the contingency contemplated by the statute relates to payment. Thus, the provision is not aimed at the contingency of liability. However, in this matter, the contingency relates to both payment and liability. The payment is contingent so long as the liability is contingent. This is because the bankruptcy code is concerned with the provability of the claim.

Congress enacted § 502(e) to prevent competition between a creditor and his guarantor for the limited proceeds of the estate. House Report 95–595, 95th Cong., 1st Sess., 354 (1977), U.S.Code Cong. & Admin.News 1978, p. 6310. Congress intended to remedy an inconsistency in prior bankruptcy law. The predecessor to this provision was § 57(i), which provided that a surety who has, in whole or in part, discharged the indebtedness of his principal may file a claim in the name of the creditor and be subrogated to the creditors' rights to that extent. *Piedmont Coal Co. v. Hustead,* 294 F. 247 (3d Cir.1923).

One problem with § 57(i) was that the creditor might not choose to file a claim against the debtor in bankruptcy and simply rely on the surety for full dispensation. By the time the creditor obtained a judgment against the surety and the surety paid the debt the statutory period for filing a claim against the debtor had run under § 57(n) and the secondary debtor would be without opportunity for reimbursement. The debt would be treated as unprovable.

Section 63(a)(8) was enacted to remedy this by allowing the secondarily liable debtor to prove this contingent claim. 3 Collier on Bankruptcy ¶ 502.05. Section 63(a)(8) provided, in pertinent part:

a. Debts of the bankrupt [debtor] may be proved and allowed against his estate

which are founded upon ... (8) contingent debts and contingent contractual liabilities.

This provision was at war with § 57(i) as to the provability of contingent claims. Section 63(a) allowed, as provable, a surety's own claim against the bankrupt. Section 57(i) only allowed the surety to sue in the creditor's name so that the surety could not assert her own claim. 3 Collier on Bankruptcy ¶ 502.05. Congress, in order to improve the Act, provided that claims be prima facie allowable. 11 U.S.C. § 502(a).

Section 57(d) of the predecessor act allowed for claims which were duly proved, unless the debtor objected to the claim. However, an unliquidated or contingent claim was not allowed unless liquidated (paid) or estimated as the court directed. If a claim could not be estimated, it could not be allowed. 3 Collier on Bankruptcy ¶ 502.03.

■ Currently, pursuant to § 502(c), when waiting for liquidation is to unduly delay the administration of the bankruptcy proceeding, the court is required to estimate the amount of an unliquidated or contingent claim before allowing it. *Id.* "[W]hile a creditor may have his claim estimated for purpose of allowance of and the right, therefore, to share in the distribution of the debtors assets, a surety or person secondarily liable with the debtor on the claim of such creditor has no right to share in the distribution of the debtor's assets until such time as the creditor's claim shall have been paid in full." *Id.* In other words, a creditor's claim which may be contingent at the time it is filed, may create a right to estimation of debt, thereby securing distribution rights. However, a person secondarily liable to a creditor is not in the same position as the creditor.

■ One who is secondarily liable may only secure distribution rights by paying the amount owed the creditor. While this provision might seem to contradict § 502(e)(1)(B), by allowing estimation of contingent creditor claims, Congress specifically intended this result. 3 Collier on Bankruptcy ¶ 502.05, n. 13. Therefore, the

statutory history does not support appellants' argument.

Finally, appellant argues that if the *Baldwin* decision, and cases following it, are correct, a distinction still exists between an indemnification claim and a contribution claim. They cite *In re Frenville*, 744 F.2d 332 (3d Cir.1984) as support for the argument, but the holding is inapposite. That was an action to lift the automatic stay of § 362(a), which stays all pre-petition suits against debtors in bankruptcy. The plaintiffs wanted to join, as third parties to an action, debtors in order to obtain indemnification or contribution. The circuit court found that the stay order was not enforceable because the cause of action arose post-petition, although the acts giving rise to liability arose pre-petition. *Frenville* simply points out that a claim, by definition, is a right to payment without regard to its contingency. *Id.* at 336. *See,* 11 U.S.C. § 101(4)(A). Section 502(e) dictates the circumstances under which "claims" are disallowed and not the circumstances under which "non-claims" are disallowed.

The court must disallow any claim for reimbursement or contribution by a surety, guarantor, or co-debtor secondarily liable with defendant or an entity that has secured the claim of a creditor to the extent that the creditor's claim itself is not allowable under § 502. 3 Collier on Bankruptcy ¶ 502.05[1]. Thus, the debtor who is secondarily liable on a debt is in no better position than the creditor, when seeking contribution or reimbursement from the debtor in bankruptcy. *Id.* Therefore, *Frenville* means that a creditor may sue the debtor in bankruptcy post-petition and not be subject to the automatic stay provision of § 362(a).

Even ignoring the inapplicability of the *Frenville* case, the indemnity/contribution distinction, which appellant offers, is not helpful. Analytically, indemnity is the same as reimbursement. One contractually provides for the reimbursement of loss incurred by another by indemnifying her. Section 502(e)(1)(B) specifically provides for disallowance of contingent claims for "re-

imbursement and contribution." Thus, the appellants' attempted distinction between indemnity and contribution is futile.

The Bankruptcy Reform Act of 1978 (the "Act") was intended to upgrade and modernize the existing bankruptcy laws. S.Rep. No. 95–989, 95th Cong., 2nd Sess., *reprinted in* U.S.Code Cong. & Admin. News 1978, 5787, 5789. The Act was designed to be consistent with, and merely an extension of, traditional concepts of ordinary bankruptcy law, responding to changing needs and economic conditions. 5 Collier on Bankruptcy ¶ 1300.01. The common purpose of the Act, consistent with prior bankruptcy jurisprudence, is to give the debtor a fresh start by discharging debt and obtaining more ratable asset distribution to creditors. 5 Collier on Bankruptcy ¶ 1300.01. Because these two goals often conflict, Congress enacted legislation which continuously balances these two interests.

To allow an alleged joint tortfeasor to file a claim for contribution, thereby securing rights to distribution of the bankrupt's estate, when the injured party has not established a right to payment from the debtor, would undermine the purpose of the Act. A debtor is discharged in bankruptcy to provide it with a fresh start. A joint tortfeasor must bear the burden of the entire debt if an injured party cannot recover from the other joint tortfeasor. While the Act provides a mechanism by which one entitled to contribution may seek it, it does not provide a mechanism to discharge anticipatory future debt.

Accordingly, the bankruptcy court's order disallowing the proofs of claim is AFFIRMED.