In re INDENTURE OF TRUST DATED NOVEMBER 30, 1979 OF FRANK E. ELLIOT AND STEPHANIE H. ELLIOT, Pine Run Trust, Inc., a/k/a Pine Run Community, Medical Center for Aging, Inc., t/a Medical Center for Aging in Doylestown, Pine Run Country Store, Inc., Pine Run Venture, and Life Care Society of America, Inc., Debtors.

Civ. A. No. 90–5852.

United States District Court,
E.D. Pennsylvania.

Feb. 27, 1991.

See also 67 B.R. 432.

Pauline K. Morgan, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for appellant.

Amy L. Banse, Drinker, Biddle & Reath, Philadelphia, Pa., for Horizon Financial.

William A. Slaughter, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellee.

## MEMORANDUM OF LAW

ROBERT F. KELLY, District Judge.

In May 1986, Pine Run Trust, Inc. ("Pine Run") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. This case is an appeal of a decision made by Chief Judge Thomas M. Twardowski of the Bankruptcy Court which disallowed an administrative proof of claim made by Dr. Eugene Willihnganz for $26,667 in the above-captioned jointly-administered proceedings.

Dr. Willihnganz is a resident of Pine Run, a "life care retirement community" located close to Doylestown, Pennsylvania. Dr. Willihnganz entered Pine Run's health care center in 1980 after an automobile accident, and decided to join the Pine Run "community" in 1981. When Dr. Willihnganz joined the community, he deposited a total of $80,000 in two installments into a trust account held by the Fidelity Bank. He also signed a Membership Agreement with the community which specified that his monthly fee would be deducted from his trust account on a monthly basis. The amount of the monthly fee charged to members of the Pine Run community varied from member to member, but one of the determining factors was the amount of money members had placed in a trust fund. Because Dr. Willihnganz had deposited $80,000, his monthly fee amounted to $644.

Shortly after filing under Chapter 11, Pine Run filed a motion to reject the Membership Agreements of many Pine Run residents, among them Dr. Willihnganz'. After negotiations between counsel for both Pine Run and a residents committee, an Amended Resident Agreement was worked out, and the Bankruptcy Court approved Pine Run's motion to reject the original Membership Agreements on March 18, 1987.

Dr. Willihnganz agreed to enter into the Amended Membership Agreement, but testified that he was advised that the Amended Agreement would not affect his trust fund. It was at this point that a dispute arose which led to the appeal. Pine Run continued to make deductions from Dr. Willihnganz' trust fund account, but Dr. Willihnganz continued to receive bills from Pine Run which did not show a credit for any deductions. Dr. Willihnganz made inquiries to Pine Run, the Fidelity Bank, and the residents committee, but funds continued to be deducted from his trust account without credit being given. Eventually Dr. Willihnganz instructed the Fidelity Bank to discontinue the deductions, an instruction which the Fidelity Bank ignored.

Dr. Willihnganz obtained counsel and filed an objection to the proposed Plan and Disclosure Statement filed by the residents committee and Horizon Financial. Dr. Willihnganz withdrew his objection subject to a stipulation that his right to file a proof of claim was preserved. The claim Dr. Willihnganz filed sought $26,667 as an administrative expense on the theory that he was entitled to a refund of the unused portion of his original entrance fee when the original agreement and the Revised Trust Agreement were terminated and he entered into the Amended Resident Agreement.

This claim was disallowed by Judge Twardowski on April 26, 1990. Judge Twardowski ruled that the funds held in trust by the Fidelity Bank for Dr. Willihnganz were property of the estate, and Dr. Willihnganz was not entitled to any distribution from those funds. On July 19, 1990, Judge Twardowski issued an order denying a reconsideration motion by Dr. Willihnganz and found that the rights of the parties were governed by the Revised Trust Agreement, and that according to that agreement, Dr. Willihnganz was entitled to distribution of the trust funds only if one of three specific "triggering events" had occurred, and none of the three had occurred.[1]

---

1. The three triggering events were 1—a claimant's voluntary withdrawal from the Communi-

ty; 2—a claimant's death; or 3—termination of a claimant's membership for cause.

Dr. Willihnganz filed an appeal of Judge Twardowski's ruling, and has raised three principle arguments: 1—that the original Membership Agreement, which provided the only authority by which Pine Run could withdraw funds from the trust account, was terminated when the Bankruptcy Court authorized its rejection; 2—that Pine Run had no equitable interest in or entitlement to the funds after the original Membership Agreement was rejected; and 3—that Pine Run's failure to credit Dr. Willihnganz' account by the amounts it was deducting from the account amounted to a partial rejection of the Membership Agreement, which was not permitted by the Bankruptcy Code.

The appellees' position was that the plain language of the Revised Trust Agreement did not support Dr. Willihnganz' claim, for the reasons Judge Twardowski articulated. But beyond that, the appellees' argument was premised on the fact that as the bankruptcy petition alone might attest, Pine Run was in a dire financial predicament before it filed under Chapter 11. Appellees assert that one of the primary reasons for this predicament had been the great disparity in the amount of money individual members had to pay to remain in the Pine Run community. Establishing some degree of equality, or as the appellees put it, attempting to "avoid the type of preferential treatment to which Dr. Willihnganz claims he is entitled" was the clear intent of the Amended Resident Agreement. Any departure from the Plan might have a "deleterious effect on Community morale and upon the likelihood of Pine Run's successful completion of its reorganization." [2]

As a starting point, despite the appellees' efforts to portray this appeal as a review of a factual determination requiring a "clearly erroneous" standard, I am satisfied that because this appeal is a matter of legal interpretation, the standard of review is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Company,* 669 F.2d 98, 102 (3d Cir.1981); *e.g., In re: Pacor, Inc.,* 110 B.R. 686 (E.D.Pa.1990).

Although both sides present compelling arguments for their position, the legal arguments eventually evolve into a question of fairness. Appellees stress the fairness to the Pine Run community; Dr. Willihnganz unsurprisingly stresses the fairness to himself. But a major difficulty in deciding this appeal is that both sides are, to varying degrees, trying to play both sides of the street. Dr. Willihnganz asserts that any interest Pine Run had in the trust fund was terminated when his Membership Agreement was terminated, but chooses to ignore the Amended Membership Agreement which he signed and which by its terms altered his relationship with Pine Run. Appellees rely on the provisions of the original agreement which spelled-out the contingencies when Dr. Willihnganz could receive the funds, but apparently has no difficulty the overlooking the aspect of the original agreement which entitled Dr. Willihnganz to a credit.

In this regard, the appellees' inconsistencies are the most troubling. Even if Dr. Willihnganz did sign off on an Amended Agreement which substantially altered his arrangement at Pine Run, it appears clear from the record that he was assured that the Amended Agreement would not substantially alter his arrangement at Pine Run. Dr. Willihnganz testified he was informed that the rejection of the Membership Agreement meant that Pine Run was no longer entitled to deduct funds from his account. In fact, this was the case for a few months. It was only when the deductions began without credits being given that this dispute began.

Appellees also suggest that Dr. Willihnganz never was entitled to the credits which are at the heart of this dispute. But this contention, as Dr. Willihnganz suggests, would make Dr. Willihnganz' decision to establish the trust fund a rather meaningless one.

Appellees maintain, in effect, that despite the promises and assurances which were made to Dr. Willihnganz over the years, Dr. Willihnganz' trust fund money must be sacrificed towards the greater

2. *See* Brief of Appellees, p. 5.

good of the Pine Run reorganization project. I agree with the finding of the Bankruptcy Court that the original Membership Agreement should be the critical point of reference in this case. But I also agree with Dr. Willihnganz' contention that it makes little sense to maintain, as appellees do, that according to the Revised Trust Agreement and its specified "triggering events," if Pine Run had decided to terminate the Membership Agreement for any reason other than "for cause," Pine Run was entitled to pocket the trust fund. For all practical purposes, after Pine Run filed under Chapter 11 and the original membership agreements were rejected, the trust terminated just as surely as if any of the three triggering events had taken place.

I believe that these are the most equitable findings I can make in what is essentially a question of fairness: that once the original Membership Agreements were terminated, Dr. Willihnganz was entitled to the funds in his trust fund; that given the circumstances of this case, Dr. Willihnganz' approval of the Amended Agreement cannot be said to be a clear, unequivocal and decisive waiver of his previous rights under the original agreement; and that accordingly he should be allowed the remaining sums left in the account in the amount indicated.

Therefore, I shall enter the following order:

### ORDER

And now, this 27th day of February, 1991, upon consideration of the above-caption bankruptcy appeal, it is ORDERED that the April 26, 1990 ruling by Chief Judge Twardowski of the United States Bankruptcy Court disallowing an administrative proof of claim by Dr. Eugene Willihnganz is REVERSED, and Dr. Willihnganz shall be allowed an administrative expense in the amount of $26,667.