*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0438p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

In re: REGAL CINEMAS, INC.,

*Debtor.*

No. 03-6433

CAPITOL INDUSTRIES, INC.,

*Plaintiff-Appellant,*

*v.*

REGAL CINEMAS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 03-00395—Aleta A. Trauger, District Judge.

Submitted: October 29, 2004

Decided and Filed: December 22, 2004

Before: MERRITT, DAUGHTREY, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Michael E. Tucci, STINSON, MORRISON & HECKER, Washington, D.C., for Appellant. Paul G. Jennings, BASS, BERRY & SIMS, Nashville, Tennessee, Herbert S. Sanger, Jr., WAGNER, MYERS & SANGER, Knoxville, Tennessee, for Appellee.

_____

**OPINION**

_____

SUTTON, Circuit Judge. Capitol Industries challenges the district court's decision to disallow its bankruptcy claim against Regal Cinemas. Because Capitol's claim is one for reimbursement against Regal as a co-liable party and because Regal already paid the underlying creditor the maximum amount permitted by the Bankruptcy Code, *see* 11 U.S.C. § 502(e)(1), the district court correctly disallowed the claim. We affirm.

I.

In 1990, Capitol Industries signed a lease agreement with its landlord, Laskin Road Associates, concerning a theater in Virginia Beach, Virginia. In 1997, Capitol assigned the lease to Regal Cinemas through an Assignment and Assumption of Lease Agreement, by which Capitol became a guarantor to the landlord of any rent obligations not paid by Regal. The assignment was part of a larger deal, in which Regal purchased ten theater leases from Capitol.

In January 2001, Regal closed the theater, and the landlord reentered the premises. On October 11, 2001, Regal sought relief under Chapter 11 of the Bankruptcy Code and rejected the lease for the theater. The landlord filed a claim in the bankruptcy court under 11 U.S.C. § 502(b)(6), seeking $822,177.89 in lease-termination damages. Regal paid the money to the landlord in satisfaction of the claim, and the parties agreed that this amount properly reflected the cap on such a claim under § 502(b)(6).

Capitol also filed a claim against Regal in the bankruptcy, seeking $5,882,785.49 in connection with "the indemnification provision in the Assignment and the Acquisition Agreement." JA 271. In ruling on cross motions for summary judgment, the bankruptcy court denied the claim, and the district court affirmed.

II.

Because a summary-judgment decision presents a pure question of law, we review the bankruptcy court's decision (as did the district court) de novo. *In re Cannon*, 277 F.3d 838, 849 (6th Cir. 2002). The bankruptcy court erred, Capitol argues, by failing to appreciate that its claim included more than just lease-rejection damages. Some of its damages, Capitol continues, sprang from contract claims that did not relate to rent under the lease—such as legal fees, costs for maintaining the premises of the theater and real estate taxes—and so should not have been barred by the cap on such damages established by § 502(e)(1). We disagree.

As a claim for indemnification for money that Capitol owed the landlord as a guarantor of the lease agreement, Capitol's claim is subject to § 502(e)(1). Section 502(e)(1) says that

> the court shall disallow *any claim for reimbursement* or contribution of an entity that *is liable with the debtor* on or has secured the claim of a creditor, *to the extent that* (A) *such creditor's claim against the estate is disallowed*; (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or (C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

11 U.S.C. § 502(e)(1) (emphasis added). These restrictions on claims made by co-liable parties work to prevent co-debtors from achieving more favorable terms than the underlying creditor, from competing with the creditor for the remains of the bankrupt's estate and from asserting both a subrogation and a reimbursement claim. *See Chase Manhattan Bank, N.A. v. Francini*, No. 91 Civ. 2515 (MBM), 1991 WL 161359, at *4 (S.D.N.Y. Aug. 16, 1991) (explaining that § 502(e)(1)(A) "reflects a policy that a surety's claim for reimbursement or contribution is entitled to no better status than the claim of the creditor assured by such surety") (quotation marks omitted); *In re Eagle-Picher Indus., Inc.*, 131 F.3d 1185, 1187 (6th Cir. 1997) (explaining that § 502(e)(1)(B) "protects debtors from multiple liability on contingent debts"); 4 Collier on Bankruptcy ¶ 502.06[2][e] (15th ed. rev. 2004) (explaining that a co-debtor must choose to assert either a claim based on reimbursement or contribution under § 502 or based on subrogation under § 509). Capitol cannot overcome the limitations placed on its claim by this section.

As a threshold matter, Capitol's indemnification claim amounts to a claim for reimbursement. "Analytically, indemnity is the same as reimbursement. One contractually provides for the reimbursement of loss incurred by another by indemnifying her." *In re Pacor, Inc.*, 110 B.R. 686, 690 (E.D. Pa. 1990) (interpreting § 502(e)(1)); *see also In re Pettibone Corp.*, 162 B.R. 791, 809 (Bankr. N.D. Ill. 1994) ("A

claim for indemnification, as well as contribution, has been considered to be for 'reimbursement' within the meaning of § 502(e)(1)(B).”); 4 Collier on Bankruptcy ¶ 502.06[2][a] (“Claims for reimbursement include indemnity claims.”).

Next, Capitol shares liability with Regal on the claim of a creditor, namely the landlord, and thus is “liable with the debtor” under the statute. The language of the provision is “broad enough to encompass any type of liability shared with the debtor, whatever its basis,” including claims “based on a contractual relationship.” *In re E. Texas Steel Facilities, Inc.*, No. 3:90-CV-2042, 2000 WL 340281, at *3 (N.D. Tex. Mar. 31, 2000) (quotation marks omitted); *see also* 4 Collier on Bankruptcy ¶ 502.06[2][b] (“Under section 502, codebtor status is broadly interpreted, and a claim for reimbursement has been held to presuppose a codebtor relationship.”). Here, while Capitol assigned the primary duty to make lease payments, it remained liable under the lease agreement if Regal failed to pay, making it “liable with” Regal for § 502(e)(1) purposes. As the encompassing language of the Assignment and Assumption Agreement says, Capitol agreed “to indemnify . . . [Regal] from and against any and all claims, losses, damages, costs, expenses and liabilities, including without limitation, court costs and reasonable attorney's fees, arising as a result of any claims brought against [Regal] arising from a breach of the Lease.” JA 234. Under this broad indemnification language, Capitol and Regal share liability to the landlord for exactly the damages for which Capitol now seeks reimbursement—any legal fees or other expenses such as taxes and maintenance costs resulting from a breach of the lease.

Lastly, the section makes clear that a claim must be disallowed “to the extent that [ ] such creditor's claim against the estate is disallowed.” 11 U.S.C. § 502(e)(1)(A). Here, in a calculation not challenged by either party, the bankruptcy court determined that the landlord could recover only $822,177.89 from the debtor, Regal, and that the remaining claim for lease payments was disallowed. As a result, Capitol's claim arising from the same lease on which it was a co-debtor with Regal must be disallowed—first because it cannot collect the $822,177.89 that Regal already has paid and second because the statute bars it from collecting any amount beyond the cap on the same claim.

To all of this, Capitol makes three responses, each unpersuasive. It first argues that § 502 bars reimbursement only for claims *based upon rent* lost by breach of the lease. But Capitol incurred the other costs for which it seeks reimbursement (maintenance costs, taxes and attorney fees) only as a result of Regal's breach of the lease. Under § 502(e)(1)(A), Capitol's claim for reimbursement must be disallowed when the claim of the underlying creditor—here, the landlord—is disallowed. Since Regal already paid the landlord the maximum amount permitted by § 502(b)(6)—a point to which Capitol stipulated—the landlord cannot assert a claim. And if the landlord may not assert the claim, neither may Capitol as a co-liable party. *See Chase Manhattan Bank*, 1991 WL 161359, at *4 (explaining that § 502(e)(1)(A) “reflects a policy that a surety's claim for reimbursement or contribution is entitled to no better status than the claim of the creditor assured by such surety”) (quotation marks omitted).

Capitol next points out that the Assignment and Assumption Agreement was part of a much larger business deal between Capitol and Regal. This ten-cinema contract, Capitol explains, created other obligations that Regal owes to Capitol, distinguishing Capitol's claim from the landlord's and making § 502(e)(1) at least partly inapplicable. But whether Capitol's claim arose from a single lease or a series of leases, the fact remains that Capitol's claim in this instance amounts to a request for reimbursement. As the bankruptcy court correctly explained, Capitol's “claimed damages arise under the indemnification provision of the Assignment and Assumption of Lease Agreement, which is incorporated by the Acquisition Agreement.” Bankr. Ct. Op. at 8. Had Regal not rejected the lease, Capitol would not have incurred any of the costs it now claims—which is enough to establish that its damages arise under the indemnification provision of the contract and thus amount to a request for reimbursement under the statute.

Capitol, lastly, invokes *In re Eagle-Picher Industries* for the proposition that Regal must show that Capitol's claim remained contingent at the time of allowance in order to disallow Capitol's claim. Capitol Br. at 18. *Eagle-Picher*, however, dealt with § 502(e)(1)(B), not with § 502(e)(1)(A). *See* 131 F.3d at 1187.

Subsection A applies here and so satisfies the disjunctive requirements under § 502(e)(1) for disallowing Capitol's claim.

III.

For these reasons, we affirm.