MARK SNYDER et al., Respondents-Appellants, v CARL JESSIE, Defendant, and NEWCOMB OIL Co., INC., Appellant-Respondent.

Fourth Department, December 21, 1990

APPEARANCES OF COUNSEL

*Alan J. Knauf & Associates, P. C. (Alan Knauf* and *Lisa L. Strain* of counsel), for respondents-appellants.

*Nixon, Hargrave, Devans & Doyle (Andrew C. Rose* of counsel), for appellant-respondent.

### OPINION OF THE COURT

DENMAN, J. P.

The primary issue for our consideration is whether plaintiffs have stated a cause of action against defendant Newcomb Oil Co., Inc. (Newcomb) under the Oil Spill Prevention, Control, and Compensation Law (the Oil Spill Law) (Navigation Law, art 12, §§ 170-197). We conclude that the Oil Spill Law does not create a private right of action and, accordingly, modify the order appealed from to dismiss plaintiffs' first cause of action.

Plaintiffs Mark Snyder and Marcia Johnson commenced this action against Newcomb, a heating oil distributor, and Carl Jessie (not a party to this appeal), the owner of a home near plaintiffs' home in the Village of Fairport. Plaintiffs' second amended complaint contains five causes of action all based on the same operative facts, the alleged contamination of plaintiffs' property by an underground oil spill allegedly caused by Newcomb. The second amended complaint, the allegations of which must be taken as true in this procedural posture, states that plaintiffs own and reside at 27 Durant Place and that Jessie owns and resides at 7 Durant Place. The elderly Jessie had a limited mental capacity, a fact known to

Newcomb, his fuel supplier, by virtue of the fact that Newcomb had arranged to take care of Jessie's fuel needs with Family Services of Rochester, Inc., to which Jessie had given a power of attorney. Jessie ordinarily used about 200 gallons of fuel oil, i.e., about one full tank, over the course of a typical heating season, but Newcomb delivered approximately 1,000 gallons of fuel oil to Jessie's residence over a two-month period in late 1986 and early 1987. The oil "immediately leaked, escaped, or was released or discharged" from Jessie's underground tank, "and migrated into the local groundwater and lands, including the Jessie property, plaintiffs' property and other nearby property, and from which it might flow, seep or drain into the waters of the State, including the groundwater and the nearby New York State Barge Canal". Plaintiffs claim that, as a result of the spill, they sustained property damage and personal injuries. In particular, their house became contaminated and their health was impaired by toxic fumes.

In their first cause of action against both defendants, plaintiffs allege that they are entitled to recover under Navigation Law § 181 for all damages caused by the "discharge of petroleum from the Jessie residence". Plaintiffs characterize the statute as imposing strict liability, "without regard to fault, for all cleanup and removal costs, and all direct and indirect damages, no matter by whom sustained", with such strict liability to be borne by "any person who has discharged petroleum of any kind and in any form". In their second and third causes of action against both defendants, plaintiffs allege that the migration of fuel oil onto plaintiffs' property was the result of defendants' negligence and "intentional" trespass. In their fourth cause of action against Newcomb alone, plaintiffs allege that Newcomb is engaged in the "abnormally dangerous activity" of delivering, storing and handling petroleum and that it therefore is liable without regard to fault for all damages resulting from the oil spill. Finally, for their fifth cause of action against both defendants, plaintiffs allege private nuisance. In their ad damnum clause, plaintiffs seek monetary damages and injunctive relief requiring the removal of all contaminants from plaintiffs' property and surrounding property and the prevention of any further discharge of petroleum from the Jessie residence.

Prior to answering, Newcomb moved to dismiss the complaint for failure to state a cause of action. Insofar as pertinent to this appeal, Newcomb argued that plaintiffs had failed

to establish that Navigation Law § 181 establishes a private right of action or that it applies to these facts. Newcomb also argued that plaintiffs had failed to allege the requisite element of a trespass and had failed to show that the delivery of fuel oil is an abnormally hazardous activity. Plaintiffs opposed defendant's motion in summary fashion.

The court granted defendant's motion to dismiss plaintiffs' third cause of action for trespass and their fourth cause of action for strict liability based on ultrahazardous activity (Snyder v Jessie, 145 Misc 2d 293, 298-299) but denied defendant's motion to dismiss plaintiffs' first cause of action for strict liability under article 12 of the Navigation Law (Snyder v Jessie, supra, at 294-298).

Newcomb appeals from that portion of the order that denied its motion to dismiss plaintiffs' first cause of action based on the Oil Spill Law. Defendant argues that the Navigation Law does not create a private right of action and that, even assuming that it does, plaintiffs' complaint fails to state a cause of action under that statute. Plaintiffs cross-appeal from so much of the order as granted Newcomb's motion to dismiss their third cause of action for trespass and their fourth cause of action based on defendant's engaging in an ultrahazardous activity.

We hold that the Oil Spill Law does not provide a private cause of action and that the court erred in denying Newcomb's motion to dismiss the first cause of action. The Oil Spill Law was enacted in 1977 for the broad purposes of controlling the transfer and storage of petroleum; preventing the unregulated discharge of petroleum in order to protect the lands, water or natural resources of the State; requiring the prompt cleanup and removal of oil spills; providing for liability for damages sustained as a result of the discharge of petroleum; and providing for a fund for swift and adequate compensation to persons damaged by such spills (Navigation Law §§ 170, 171). Navigation Law § 173 states, "the discharge of petroleum is prohibited" except where done in compliance with a Federal or State permit. Under the statute, "petroleum" includes fuel oil; "discharge" means any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the State or onto lands from which it might flow or drain into said waters; and "waters" includes ground water (Navigation Law § 172 [8], [15], [18]).

Pursuant to sections 175 and 176 of the act, any person responsible for causing a discharge shall immediately notify the Department of Environmental Conservation, which shall promptly undertake to clean up the spill by drawing upon moneys in the Spill Compensation Fund. The Spill Compensation Fund is a revolving fund financed by license fees imposed upon owners of "major facilities" and "vessels" and by reimbursements and penalties assessed against spillers (Navigation Law §§ 174, 179, 186). A person damaged by an oil spill is also authorized to clean it up, provided he obtains approval from State or Federal authorities (Navigation Law § 176 [7] [a]).

Part 3 of the act, entitled "New York Environmental Protection and Spill Compensation Fund; Liability; Third-Party Compensation", provides, at section 181 (1), that "[a]ny person[1] who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained, as defined in this section". Navigation Law § 181 (2) provides that the fund also shall be strictly liable for such costs and damages. The remainder of subdivision (2) concerns the kinds of, and limitations upon, damages recoverable against the fund (Navigation Law § 181 [2] [a]-[e]). Subdivision (3) concerns the limitations upon the damages recoverable against an owner of a major facility or vessel. The last sentence of subdivision (3) provides, "Damages which may be recovered from, or by, any other person, shall be limited to those authorized by common or statutory law" (Navigation Law § 181 [3]).

Navigation Law § 182 sets out the procedures by which injured parties file claims against the fund. Navigation Law § 183, entitled "Settlements", provides that the fund "shall attempt to promote and arrange a settlement between the claimant and the person responsible for the discharge. If the source of the discharge can be determined and liability is conceded, the claimant and the alleged discharger may agree to a settlement which shall be final and binding upon the parties and which will waive all recourse against the fund". Navigation Law § 184 provides for settlement of claims against the fund where the source of the discharge is unknown or cannot be determined. Navigation Law § 185 concerns the creation of boards of arbitration to determine all

1. "Person" is broadly defined in Navigation Law § 172 (14) as virtually any entity.

other claims against the fund. Navigation Law § 186 authorizes the fund to pay arbitrated claims and Navigation Law § 187 authorizes the fund to recoup such payments from persons who are responsible for causing a discharge and who have failed to clean it up. Navigation Law § 188 provides that, upon payment of a claimant's cleanup costs or damages, the fund shall be subrogated to the rights of the claimant to recover such costs or damages from the discharger. In that event, the fund is empowered to sue the discharger and may recover upon proof "that an unlawful discharge occurred which was the responsibility of the discharger" (i.e., without proving fault). Navigation Law § 190 provides, "Any claims for costs of cleanup and removal, civil penalties or damages by the state and any claim for damages by any injured person, may be brought directly against the bond, the insurer, or any other person providing evidence of financial responsibility". Finally, Navigation Law § 193 provides: "Nothing in this article shall be deemed to preclude the pursuit of any other civil or injunctive remedy by any person. The remedies provided in this article are in addition to those provided by existing statutory or common law, but no person who receives compensation for damages or cleanup and removal costs pursuant to any other state or federal law shall be permitted to receive compensation for the same damages or cleanup and removal costs under this article."

A reading of the pertinent statutory provisions leads us to conclude that the law does not create a private right of action, but rather provides injured parties with an administrative remedy in lieu of their existing common-law and statutory remedies. The statute contemplates an interaction between the DEC and the discharger with the DEC acting primarily on behalf of protection of the environment and secondarily on behalf of an injured claimant. A claimant must proceed against the DEC-administered Oil Spill Fund, which alone has recourse against the discharger. Thus, under the statutory scheme, claimants may either proceed against the fund or pursue their existing common-law remedies directly against dischargers.

The legislative history of the act refutes the interpretation placed upon the statute by plaintiffs. Nowhere in the bill jacket is there any reference to the creation of a private right of recovery in favor of victims of oil spills. To the contrary, in the DEC's memorandum of approval at the time of the bill's enactment, the Deputy Commissioner stated: "[T]he fund will

be used primarily to pay for cleanup of oil spills and compensate those victims of such spills who choose to utilize the administrative remedies created in the Act rather than to pursue existing statutory and common-law remedies". He further stated: "Those who suffer losses as a result of oil spills are granted an administrative remedy which avoids the problems created by protracted litigation, although judicial remedies remain available to them * * * When the source of a discharge is unknown, victims may utilize the administrative remedy, in sharp contrast to the existing law, which provides no remedy".

Similarly, in his memorandum for the Governor, then Attorney-General Louis Lefkowitz stated as follows in commenting on the inadequacy of the fund: "This is particularly so since the bill contemplates that, if awards exceed the amount in the fund, the claims will be paid piecemeal until enough fees are collected. This would be a poor excuse for the 'swift and adequate compensation' which section 170 of article 12 promises * * *. A person should have the option of bringing a court action directly against the same persons mentioned below who would otherwise be liable to the fund for all damages to that person".

Additionally, the cases relied upon by plaintiffs are not persuasive authority for the proposition that the Navigation Law creates a private right of recovery. In *Domermuth Petroleum Equip. & Maintenance Corp. v Gorman Bros.* (127 Misc 2d 323), plaintiff was the contractor which had been hired by the State Department of Transportation to perform the cleanup work in the aftermath of a spill caused by defendant.[2] After plaintiff cleaned up the spill, it sued to recover its costs from defendant discharger, which took the position that plaintiff had to seek payment from the fund, which in turn could recover the costs from defendant. The court rejected that contention, observing that if the Department of Transportation had undertaken the cleanup itself, it could have sued defendant directly to recover its costs. The court held that, since plaintiff performed the cleanup work at DOT's direction, it became an agent of the State and the discharger was directly and strictly liable to plaintiff *(Domermuth Petroleum Equip. & Maintenance Corp. v Gorman Bros., supra,* at 324-

---

2. As originally enacted, the Oil Spill Law provided for initial cleanup to be undertaken by the Department of Transportation in conjunction with the Department of Environmental Conservation. In 1985, the act was amended to transfer all jurisdiction to the DEC.

325). In the context of those facts, it was purely dictum for the *Domermuth* court to hold that an injured claimant may sue a discharger directly under the act *(Domermuth Petroleum Equip. & Maintenance Corp. v Gorman Bros., supra).*

In *Town of Guilderland v Texaco Ref. & Mktg.* (159 AD2d 829), the sole issue was whether the trial court properly denied defendants' motion to dismiss the complaint as barred by the Statute of Limitations. In deciding that issue, the Third Department assumed that an injured claimant could sue a discharger directly under the Oil Spill Law *(Town of Guilderland v Texaco Ref. & Mktg., supra,* at 830-831). Inasmuch as that issue was not before the court, that decision provides little authority for plaintiffs' position.

■ ■ Addressing plaintiffs' cross appeal, we conclude that the court properly dismissed their cause of action for trespass. Plaintiffs' complaint does not allege facts tending to show that defendant had the requisite willful intent to intrude upon plaintiffs' property *(Phillips v Sun Oil Co.,* 307 NY 328, 331). Further, we conclude that the court properly dismissed the claim for strict liability based upon ultrahazardous activity. We agree with the trial court that the residential storage and delivery of heating oil does not constitute an ultrahazardous activity.

Accordingly, the order appealed from should be modified to dismiss plaintiffs' first cause of action and otherwise affirmed.

GREEN, BALIO, LAWTON and DAVIS, JJ., concur.

Order unanimously modified, on the law, and as modified affirmed, without costs.