In re ALLEGHENY INTERNATIONAL, INC., et al., Debtors.

AL TECH SPECIALTY STEEL CORPORATION, Appellant,

v.

ALLEGHENY INTERNATIONAL, INC., Appellee.

Civ. A. No. 90–1081.
Bankruptcy No. 88–448.

United States District Court,
W.D. Pennsylvania.

May 6, 1991.

George L. Cass, Pittsburgh, Pa., William Gardner, Washington, D.C., J.A. Katarin-cic, Pittsburgh, Pa., for Allegheny Intern., Inc.

Robert Sable, Pittsburgh, Pa., for Committee of unsecured creditors of A.I.

David K. Floyd, Buffalo, N.Y., H. Brian Peck, Pittsburgh, Pa., for Al Tech Specialty Steel Corp.

## MEMORANDUM OPINION

BLOCH, District Judge.

Presently before the Court is an appeal of the bankruptcy court's Order and Memorandum Opinion entered on April 30, 1990. *In re Allegheny International, Inc.*, No. 88–448 (Bankr.W.D.Pa. 4/30/90). For the reasons stated hereafter, this Court affirms the bankruptcy court's opinion in part, reverses in part, and remands for further proceedings.

### I. Facts

On August 2, 1976, Allegheny Ludlum Industries, Inc., the predecessor of Allegheny International, Inc. (the debtor), sold its Dunkirk and Watervliet steel plants to AL Tech Specialty Steel Corporation (Old AL Tech). The purchase agreement obligated Allegheny Ludlum to indemnify Old AL Tech against all liabilities and obligations stemming from Allegheny Ludlum's ownership of the plants. The purchase agreement also contained a non-assignability clause. On April 29, 1981, Old AL Tech sold the plants to GATX Corporation pursuant to a merger agreement between Old AL Tech, GATX, and New AL Tech Corporation. Pursuant to this agreement, Old AL Tech and New AL Tech were merged, with the surviving corporation being New AL Tech. The name of New AL Tech was subsequently changed to AL Tech Specialty Steel Corporation (AL Tech). On June 30, 1986, GATX sold AL Tech to Rio Algom, Inc.

On May 26, 1988, AL Tech filed a proof of claim against the estate of the debtor alleging that the debtor was liable for response costs incurred, and to be incurred, for the investigation and remediation of hazardous wastes located at AL Tech's Dunkirk and Watervliet plants. AL Tech

contends that these waste sites arose in whole or in part during the debtor's ownership of these properties. AL Tech asserts that the debtor is liable for response costs pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) as amended by the Superfund Amendments and Reauthorization Act, the New York Oil Spill Prevention, Control and Compensation Act (Oil Spill Act), and the indemnity provision in the 1976 sale agreement. On January 12, 1990, the debtor moved for summary judgment and for disallowance of AL Tech's claim. On January 22, 1990, AL Tech filed a cross-motion contending that a portion of its claim is not dischargeable because it did not arise prior to the bankruptcy. On April 30, 1990, the bankruptcy court issued its opinion granting debtor's motion for summary judgment and denying AL Tech's cross-motion. The court determined that: (1) the non-assignment clause of the 1976 agreement of sale bars AL Tech from relying on the indemnity provision; (2) AL Tech's claims are excluded by 11 U.S.C. § 502(e)(1)(B); and (3) AL Tech's claims arose pre-petition and thus are dischargeable in the bankruptcy.

## II. Discussion

As an initial matter, *de novo* review is appropriate because the bankruptcy court's decision involved a grant of summary judgment. This Court must utilize the same standard employed by the bankruptcy court. Under this standard, summary judgment can be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Bankr.R. 7056; Fed.R. Civ.P. 56(c).

▮ AL Tech first argues that the right to indemnification contained in the 1976 agreement of sale was not eliminated by the agreement's non-assignment clause and subsequent mergers and sales involving AL Tech. Upon review of the bankruptcy court's resolution of this dispute, and after consideration of the arguments raised by the parties, this Court affirms the bankruptcy court regarding AL Tech's right to

contractual indemnification for the reasons set forth in the bankruptcy court's opinion. *In re Allegheny International,* slip op. at 7–10.

AL Tech next argues that the bankruptcy court erred in determining that AL Tech's claims pursuant to CERCLA and the Oil Spill Act are excluded by 11 U.S.C. § 502(e)(1)(B). Section 502(e)(1)(B) provides that:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that ... such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

This provision has generally been construed as requiring three elements: (1) the claim must be one for reimbursement or contribution; (2) the entity asserting the claim must be liable with the debtor on the claim of a creditor; and (3) the claim must be contingent at the time of its allowance or disallowance. *In re Provincetown–Boston Airlines, Inc.,* 72 B.R. 307, 309 (Bankr. M.D.Fla.1987); *In re A & H, Inc.,* 122 B.R. 84, 85 (Bankr.W.D.Wis.1990).

In the present case, the dispute centers upon the second *Provincetown–Boston* factor: whether AL Tech is liable with the debtor on the claim of a creditor. AL Tech contends that the claim it asserts is a direct claim, and does not involve a mutual creditor. The debtor, on the other hand, argues that AL Tech's claim involves the Environmental Protection Agency (EPA) and the New York Department of Environmental Conservation (DEC) as creditors to whom AL Tech is liable with the debtor.

▮ In construing § 502(e)(1)(B), this Court must begin with the language of the statute itself. If the language is plain, the Court need not inquire further. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989). Section 502(e)(1)(B) expressly applies to claims "for reimbursement or contribution of an entity that is liable with the debtor on ... the claim of a

creditor." 11 U.S.C. § 502(e)(1). The natural reading of this language demonstrates that Congress intended to exclude claims where the claimant and the debtor are jointly liable to a third party. The legislative history of § 502(e) supports such a reading. As stated in the House and Senate Reports, § 502(e)

> requires disallowance of the claim for reimbursement or contribution of a codebtor, surety or guarantor of an obligation of a debtor, unless the claim of the creditor on such obligation has been paid in full. The provision prevents competition between a creditor and his guarantor for the limited proceeds in the estate.

S.Rep. No. 95–989, 95th Cong., 2nd Sess. 65 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5851; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 354 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6310.

Neither the language of § 502(e)(1) nor its legislative history evince congressional intent to exclude direct contingent claims. Instead, under a plain reading of the language of § 502(e)(1), only claims involving joint or secondary liability owed to a third-party creditor are excluded. Moreover, 11 U.S.C. § 502(c) provides an express method for treating direct contingent claims.[1] Thus, this Court finds that § 502(e)(1)(B) does not exclude direct contingent claims. *See, e.g.,* 3 *Collier on Bankruptcy* ¶ 502.05, at 502–87–88 (15th ed. 1990) (§ 502(e)(1)(B) applies to claims of sureties and entities secondarily liable whereas § 502(c) applies to claims of the debtor's creditors).

In order to determine the applicability of § 502(e)(1)(B) in this case, the Court must analyze the claim asserted by AL Tech. AL Tech's proof of claim asserts theories of liability pursuant to, *inter alia,* CERCLA and the Oil Spill Act. The bankruptcy court limited its § 502(e)(1)(B) discussion to AL Tech's CERCLA claim.[2] The parties have not briefed the applicability of § 502(e)(1)(B) to the Oil Spill Act claim. This Court will thus limit its discussion to the CERCLA claim, reserving the effect of § 502(e)(1)(B) on AL Tech's Oil Spill Act claim for further consideration by the bankruptcy court. Regarding the CERCLA claim, the proof of claim does not specify the CERCLA provision on which AL Tech relies. However, AL Tech has clarified in its briefs to this Court that it relies on 42 U.S.C. § 9607(a)(4)(B). (Brief of appellant at 27; reply brief of appellant at 10).

Section 9607(a) provides, in pertinent part:

> [T]he owner and operator of a vessel or a facility, [and] any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for
>
> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; [and]
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan[.]

Section 9607(a) thus authorizes two types of actions: (1) a joint-tortfeasor type contribution action for response costs incurred by a government entity, and (2) a direct

---

1. Title 11 U.S.C. § 502(c)(1) provides: "There shall be estimated for purpose of allowance under this section ... any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case[.]"

2. The bankruptcy court did determine that the Oil Spill Act provides a private cause of action sufficient to support AL Tech's claim thereunder. Slip op. at 12–13; *see Domermuth Petroleum Equipment and Maintenance Corp. v. Gor-*

*man Brothers,* 127 Misc.2d 323, 485 N.Y.S.2d 705, 706–07 (1985) (Oil Spill Act created private cause of action whereby contractor who performed cleanup could recover response costs from responsible party); *but see Snyder v. Jessie,* 164 A.D.2d 405, 565 N.Y.S.2d 924, 926–28 (1990) (Oil Spill Act does not provide a private cause of action for recovery of injuries caused by an adjoining landowner's discharge of oil). This determination has not been challenged by debtor.

action for recovery of response costs incurred by a non-government entity.[3]

AL Tech concedes, as it must, that § 9607(a)(4)(A) actions for recovery of response costs incurred by a government entity fall within the scope of § 502(e)(1)(B). AL Tech argues, however, that its claim is for direct costs recoverable pursuant to § 9607(a)(4)(B). AL Tech contends that direct costs do not involve liability with the debtor owed to a third-party creditor, and thus fall outside the ambit of § 502(e)(1)(B).

Two courts have considered the question of whether § 9607(a)(4)(B) response costs are covered by § 502(e)(1)(B). In *In re Charter*, 862 F.2d 1500, 1503 (11th Cir. 1989), the Court implied that voluntarily undertaken remedial actions to reduce or eliminate the threat of a toxic spill are not excludable under § 502(e)(1)(B). The Court did not decide this issue, though, because it found that the response costs involved in that case were not direct, but instead were for costs incurred by third parties to whom the claimant was liable with the debtor. Similarly, the Court in *In re Hemingway Transport, Inc.*, 105 B.R. 171 (Bankr.D. Mass.1989), stated that § 502(e)(1)(B) does not apply to direct remedial actions undertaken by the claimant to reduce or eliminate the threat of hazardous waste. *Id.* at 175.

Debtor, relying on *In re Wedtech Corp.*, 87 B.R. 279 (Bankr.S.D.N.Y.1988), argues that AL Tech does not have a direct action against it. In *Wedtech*, Wedtech admitted that it had engaged in a practice of submitting fraudulent invoices to the government. This disclosure prompted lawsuits filed by Wedtech shareholders against, *inter alia*, KMG, Wedtech's accounting firm, alleging securities law violations and common law fraud. Wedtech subsequently petitioned for bankruptcy, and KMG filed a proof of claim against Wedtech's estate. The proof of claim indicated that Wedtech was liable to KMG for fraud, misrepresentation, and breach of contract. Wedtech contested KMG's proof of claim on the theory that

the claim was excluded by § 502(e)(1)(B). KMG responded that its claim was "a direct fraud or breach of contract claim for damages flowing from whatever liability attaches to KMG as a result of the resolution of the Civil Actions." 87 B.R. at 283. The Court rejected KMG's argument, finding that KMG's claims "all seek reimbursement for monies to be expended by KMG in defense and in satisfying its liability to the various plaintiffs in the Civil Actions." *Id.* at 287. Consequently, the Court determined that KMG's claims were excluded by § 502(e)(1)(B).

*Wedtech* is inapposite in the present case. AL Tech does not seek to recover sums owed to a third party such as the EPA or DEC, but instead seeks to recover sums it has personally expended and will personally expend in the future to remediate hazardous waste at the Dunkirk and Watervliet sites. Debtor argues that AL Tech's claim "springs from the co-liability AL Tech and [debtor] ultimately have to the EPA and the DEC." (Brief of appellee at 31). However, although both debtor and AL Tech are liable for the waste remediation, should AL Tech undergo the cleanup itself, debtor is liable directly to AL Tech pursuant to § 9607(a). Contrary to debtor's contention, for purposes of § 502(e)(1)(B), the distinction between a cleanup performed by AL Tech and a cleanup performed by the EPA is crucial. (*See* brief of appellant at 34–35 (arguing that this is "a distinction without a difference")). Section 502(e)(1)(B) is not a means of immunizing debtors from contingent liability, but instead protects debtors from multiple liability on contingent debts.

■ This Court finds that AL Tech's claim for response costs pursuant to § 9607(a)(4)(B) is not excluded by § 502(e)(1)(B). AL Tech does not seek to recover response costs owed to, or incurred by, the EPA, the DEC, or any other third party, but instead seeks to recover response costs it has directly incurred and will directly incur in the future. AL Tech

---

**3.** Courts have uniformly recognized that § 9607(a) creates a private cause of action. *Artesian Water Co. v. Government of New Castle*

*County*, 851 F.2d 643, 651 (3d Cir.1988); *3550 Stevens Creek Associates v. Barclays Bank of California*, 915 F.2d 1355, 1358 (9th Cir.1990).

is not liable with the debtor to any creditors for such costs, so these costs fall outside the scope of § 502(e)(1)(B). Consequently, the bankruptcy court's determination that § 502(e)(1)(B) excludes AL Tech's claims must be reversed.

■ The bankruptcy court expressed concern that allowance of AL Tech's claims could result in double liability to the debtor if AL Tech fails to clean up the sites and the EPA then brings an action against debtor for remediation of the hazardous sites. Slip op. at 19–20. Such possibility troubles this Court as well. However, the gravity of this possibility can be diminished. For example, the bankruptcy court may consider the fact that AL Tech might not incur future response costs when estimating AL Tech's claim pursuant to 11 U.S.C. § 502(c)(1). *See, e.g., Bittner v. Borne Chemical Co.,* 691 F.2d 134 (3d Cir. 1982) (bankruptcy court has broad discretion in estimating contingent claims). Additionally, as suggested by AL Tech (reply brief of appellant at 7), the bankruptcy court can require that any distributions on AL Tech's claim be placed in a trust to be expended on the remediation of the waste sites. Bankruptcy courts are courts of equity, *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 527, 104 S.Ct. 1188, 1196–97, 79 L.Ed.2d 482 (1984), possessing power to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code. 11 U.S.C. § 105(a); *In re Morristown & Erie Railroad Co.,* 885 F.2d 98, 100 (3d Cir.1989). Creation of a trust to be expended on contingent claims is a frequently used mechanism for insuring that such funds are properly disbursed. *See, e.g., In re Johns–Manville Corp.,* 68 B.R. 618, 625–26 (Bankr.S.D.N.Y.1986), *aff'd.,* 78 B.R. 407 (S.D.N.Y.1987), *aff'd.,* 843 F.2d 636 (2d Cir.1988); *In re A.H. Robins Co.,* 88 B.R. 742 (E.D.Va.1988), *aff'd.,* 880 F.2d 694 (4th Cir.1989). In the present case, use of a trust would be an effective means of guaranteeing that distributions on AL Tech's claim be used to remediate the waste sites. Such a trust would eliminate the potential for double recovery from the debtor for such remediation.

AL Tech raises an alternative argument to its § 502(e)(1)(B) theory. AL Tech contends that numerous distinct areas of contamination exist at its Watervliet and Dunkirk plants. AL Tech asserts that each such area of contamination constitutes a separate "facility" for purposes of CERCLA. AL Tech admits that pre-petition response costs were incurred at some of these facilities, but states that no pre-petition response costs were incurred at the other facilities. (Brief of appellant at 34). AL Tech argues that as to the facilities for which no pre-petition response costs were incurred, no CERCLA claim arose pre-petition, so future response costs for these facilities "pass through" the bankruptcy. Debtor responds that pre-petition response costs were incurred at each facility, so pre-petition CERCLA claims arose as to each of AL Tech's facilities.[4]

A Chapter 11 confirmation discharges the debtor of all debts, except those enumerated in 11 U.S.C. § 523(a), which occurred before the bankruptcy. *Ohio v. Kovacs,* 469 U.S. 274, 278, 105 S.Ct. 705, 707, 83 L.Ed.2d 649 (1985). AL Tech does not argue that its response costs fall within any of the § 523(a) exceptions, but instead argues that some of its response costs did not arise before the bankruptcy, and thus are not dischargeable debts in the bankruptcy. A debt, for purposes of bankruptcy, is defined as "liability on a claim." 11 U.S.C. § 101(11). A claim is defined as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy

---

4. Debtor also argues that AL Tech waived its pass through argument because it did not assert such a position until nearly two years after it filed its proof of claim. However, the bankruptcy court did not find that AL Tech had waived its right to proffer such an argument, but instead the court addressed AL Tech's argument on its merits.

is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

11 U.S.C. § 101(4). In order for AL Tech's response costs to be dischargeable, they must amount to a bankruptcy claim. *Kovacs,* 469 U.S. at 278–81, 105 S.Ct. at 707–09.

■ The Bankruptcy Code does not create claims. Instead, "a bankruptcy claim must be based on state or federal law that, 'wholly apart from bankruptcy,' creates substantive obligations." *Schweitzer v. Consolidated Rail Corp.,* 758 F.2d 936, 941 (3d Cir.) (*quoting Vanston Bondholder's Protective Committee v. Green,* 329 U.S. 156, 170, 67 S.Ct. 237, 243, 91 L.Ed. 162 (1946) (Frankfurter, J., concurring)), *cert. denied,* 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *In re Remington Rand Corp.,* 836 F.2d 825, 830 (3d Cir. 1988). The existence of a valid bankruptcy claim depends on: (1) whether the claimant possessed a right to payment, and (2) whether that right arose before the bankruptcy. *Remington Rand,* 836 F.2d at 830; *In re M. Frenville Company,* 744 F.2d 332, 336 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). The timing of the existence of a right to payment is determined in accordance with the substantive law creating the obligation. *Schweitzer,* 758 F.2d at 942; *Frenville,* 744 F.2d at 336–37.[5] Thus, the determination of whether AL Tech's CERCLA liabilities are dischargeable depends on whether AL Tech possessed a pre-petition right to recover payment for such liabilities.

■ Under CERCLA, a party may recover, *inter alia,* "necessary costs of response incurred by any … person consistent with the national contingency plan." 42 U.S.C. § 9607(a).[6] The language of § 9607(a) mandates the conclusion that a § 9607(a) cause of action does not accrue until response costs are incurred. *See, e.g., United States v. Price,* 577 F.Supp. 1103, 1110 (D.N.J.1983) ("the government must first begin the cost of the cleanup and incur some expenses before it can initiate an action" under § 9607(a)); *In re Jensen,* 114 B.R. 700, 702–03 (Bankr.E.D.Cal.1990) (claim for response costs does not arise until costs are actually incurred). CERCLA does not define the term "necessary costs of response," but does define "response" as "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25). The terms "remove" and "removal" are defined as including

> such actions as may be necessary (sic) taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

---

**5.** The Third Circuit has theorized that a party may have a bankruptcy claim and not possess a cause of action on that claim. *Remington Rand,* 836 F.2d at 832; *Schweitzer,* 758 F.2d at 942–43. Such a situation exists only where the claimant and the debtor had a pre-petition legal relationship giving rise to the claim. *Schweitzer,* 758 F.2d at 943. In the present case, no legal relationship existed pre-petition so as to give rise to AL Tech's CERCLA liabilities. Mere knowledge of the existence of hazardous waste coupled with knowledge of the identities of potentially responsible parties, in the absence of an abatement order pursuant to 42 U.S.C. § 9606(a) or a cost recovery action pursuant to 42 U.S.C. § 9607(a) or 42 U.S.C. § 9613, does not suffice as a legal relationship adequate to justify inclusion of the claim in the bankruptcy

prior to the claim's development as a cause of action.

**6.** To prevail on its claims under 42 U.S.C. § 9607(a), AL Tech must show that (1) the waste disposal sites are "facilities" within the meaning of 42 U.S.C. § 9601(9); (2) "releases" or "threatened releases" of "hazardous substances" from the facilities have occurred; and (3) such releases or threatened releases have caused AL Tech to incur, or will cause AL Tech to incur in the future, necessary response costs that are consistent with the national contingency plan. *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1152 (9th Cir.1989); *Ambrogi v. Gould, Inc.,* 750 F.Supp. 1233, 1239 (M.D.Pa.1990) (*quoting Prudential Ins. Co. v. U.S. Gypsum,* 711 F.Supp. 1244, 1251 (D.N.J.1989)).

42 U.S.C. § 9601(23). Thus, expenses incurred for monitoring a waste site and developing a clean-up plan are recoverable response costs. *See Artesian Water Co. v. Government of New Castle County*, 851 F.2d 643, 651 (3d Cir.1988) (costs incurred for monitoring and evaluating the impact of a spill are recoverable); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1154 (9th Cir.1989) (costs of developing a remedial action plan are recoverable); *Cadillac Fairview/California, Inc. v. Dow Chemical Co.*, 840 F.2d 691, 695 (9th Cir. 1988) (costs of hiring experts to conduct chemical testing and monitoring of a waste site are recoverable).

■ AL Tech contends that it did not incur any pre-petition response costs as to some of the waste sites at issue. (Brief of appellant at 34–35). Debtor vigorously disputes this contention, arguing that AL Tech incurred response costs as to each of its sites as early as 1987 when it hired an expert "to assess all of the environmental problems at the plants and prioritize AL Tech's efforts with respect to each of its environmental problems." (Brief of appellee at 44). The bankruptcy court conducted a hearing during which "AL Tech d[id] not dispute that it incurred various response costs, such as hiring an in-house environmental specialist and using consultants to perform various tests and evaluations." Slip op. at 22. The bankruptcy court's finding, however, does not detail whether response costs were incurred as to each of AL Tech's waste sites. Therefore, this Court must remand this issue to the bankruptcy court for further findings regarding the response costs incurred by AL Tech as to each of its waste sites. As to each facility, if any costs were incurred pre-petition, then a CERCLA claim arose as to that facility pre-petition, and all response costs incurred and to be incurred remediating the facility are dischargeable. Alternatively, if AL Tech proves that it did not incur any pre-petition response costs for a facility, then a dischargeable CERCLA claim did not arise as to that facility.[7]

7. AL Tech bears the burden of proving that the sites for which it asserts pass-through status constitute facilities distinct from those for which pre-petition response costs were incurred.

### III. Conclusion

The bankruptcy court's determination that the non-assignment clause of the 1976 agreement of sale prohibits AL Tech from asserting the indemnity provision of the 1976 agreement is affirmed. The bankruptcy court's entry of summary judgment on debtor's motion and denial of AL Tech's cross-motion are reversed. This matter is remanded to the bankruptcy court for a determination of what response costs were incurred by AL Tech and when, as well as an estimation of AL Tech's claim.

An appropriate Order will be issued.