In re: **EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.**

**NORPAK Corporation, Appellant,**

v.

**EAGLE–PICHER INDUSTRIES, INC., Appellee.**

No. 95–4128.

United States Court of Appeals, Sixth Circuit.

Argued June 4, 1997.

Decided Dec. 16, 1997.

Jeffrey J. Harmon (briefed), Thomas W. Coffey (argued and briefed), Kevin R. Feazell (briefed), Cors & Bassett, Cincinnati, OH, for Appellant.

Kim Martin Lewis, Douglas S. Tripp (briefed), Frost & Jacobs, Cincinnati, OH, Stephen Karotkin (argued and briefed), Weil, Gotshal & Manges, New York City, for Appellee.

Before: MARTIN, Chief Judge; RYAN and BATCHELDER, Circuit Judges.

BATCHELDER, J., delivered the opinion of the court, in which RYAN, J., joined. MARTIN, C.J. (p. 1191), delivered a separate concurring opinion.

BATCHELDER, Circuit Judge.

In this appeal, Norpak Corporation contests the bankruptcy court's disallowance of its contingent environmental claim against Eagle–Picher Industries, Inc. For the reasons stated below, we affirm, in part, and remand this case to the bankruptcy court for further proceedings consistent with this opinion.

## I.

Debtor Eagle–Picher filed for relief under Chapter 11 of the Bankruptcy Code on January 7, 1991. The bankruptcy court set Octo-

ber 31, 1991, as the "General Claims Bar Date" for filing proofs of claim against the debtor, and Norpak timely filed its proof of claim on the bar date. Norpak's claim is a contingent claim for the environmental cleanup costs associated with real property it purchased from Eagle–Picher in 1956.

On March 17, 1993, Eagle–Picher objected to Norpak's claim arguing that the claim should be disallowed pursuant to 11 U.S.C. § 502(e)(1)(B), a section permitting the disallowance of certain contingent claims for reimbursement or contribution. Specifically, Eagle–Picher argued that Norpak's claim should be disallowed because Norpak and Eagle–Picher are co-liable to a third-party-namely, the federal or state environmental authorities. On January 9, 1995, the bankruptcy court sustained Eagle–Picher's objection. The district court affirmed the bankruptcy court's decision on September 13, 1995.

The facts of this appeal are undisputed. On November 30, 1956, Vincent J. Coraci purchased Eagle–Picher's property at 70–76 Blanchard Street, Newark, New Jersey (the "Blanchard Street property"). The property is currently owned by Norpak and another related entity wholly owned by Coraci. Prior to selling the property to Coraci, Eagle–Picher had conducted a lead processing operation on the premises in which lead was smelted, pulverized, and processed for use in lead-based paint. As a result of these operations, Eagle–Picher has been identified as a potentially responsible party ("PRP") under federal and state environmental laws.

Given the nature of Eagle–Picher's former operations on the premises of the Blanchard Street property and environmental problems which have emerged on adjacent properties, Norpak believes that it will eventually encounter environmental problems stemming from Eagle–Picher's earlier business activities. It is those potential cleanup costs which form the basis of Norpak's claim in bankruptcy court.

As noted above, the bankruptcy court set October 31, 1991, as the bar date for filing proofs of claim against Eagle–Picher, and Norpak timely asserted its proof of claim based on its contingent environmental liability. No other environmental proofs of claim were filed against Eagle–Picher prior to the bar date. While this appeal was pending, however, Eagle–Picher entered into a settlement agreement with the Environmental Protection Agency ("EPA") by which the agency is allowed to file claims against Eagle–Picher in the future.

## II.

The issue now before us is whether the bankruptcy court erred in disallowing Norpak's contingent environmental claim against Eagle–Picher pursuant to 11 U.S.C. § 502(e)(1)(B).

■■■ '[I]n appeals from the decision of a district court on appeal from the bankruptcy court, the court of appeals independently reviews the bankruptcy court's decision, applying the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law.'" *In re Century Boat Co.*, 986 F.2d 154, 156 (6th Cir.1993) (quoting *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir.1991)) (brackets in original); *see also In re Martin*, 761 F.2d 1163, 1166 (6th Cir.1985).

■■■ Section 502(e)(1)(B) provides that "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on ... the claim of a creditor, to the extent that ... such claim ... is contingent as of the time of allowance or disallowance of such claim." 11 U.S.C. § 502(e)(1)(B). The section is not intended to "immunize debtors from contingent liability, but instead protects debtors from multiple liability on contingent debts." *In re Allegheny Int'l, Inc.*, 126 B.R. 919, 923 (W.D.Pa. 1991). In order for a claim to be disallowed under § 502(e)(1)(B), therefore, the debtor must be able to show the following three elements:

(1) the claim is for reimbursement or contribution;

(2) the claim is asserted by an entity co-liable with the debtor on a primary creditor's claim; and

(3) the claim is contingent as of the time of disallowance.

*In re Dant & Russell, Inc.,* 951 F.2d 246 (9th Cir.1991).

The bankruptcy court found that Eagle–Picher had successfully demonstrated that Norpak's claim met all three requirements of the § 502(e)(1)(B) test for disallowance, and therefore denied Norpak's claim. On appeal, Norpak challenges the bankruptcy court's conclusion on two grounds: (1) that Eagle–Picher is not co-liable with Norpak for the cleanup costs associated with the Blanchard Street property; and (2) that Norpak's claim is not for "reimbursement or contribution."

### A. Whether Eagle–Picher is Co–Liable with Norpak

■ Norpak first argues that Eagle–Picher is not co-liable with Norpak for the cleanup costs associated with the Blanchard Street property because neither the EPA nor the New Jersey Department of Environmental Protection and Energy ("NJDEPE") has filed claims against Eagle–Picher, and the bar date for filing such claims passed more than four years ago.

Federal Rule of Bankruptcy Procedure 3003, which governs the filing of proofs of claims in Chapter 11 cases, provides that a creditor with a contingent claim must file a proof of claim within the time prescribed by the bankruptcy court. A creditor who fails to do so will no longer be considered a creditor with respect to that claim, unless the creditor is entitled to one of the exceptions for late filings. There are several exceptions to Rule 3003, but only one of them is applicable to the present case.

Federal Rule of Bankruptcy Procedure 9006(b) applies to parties who can demonstrate excusable neglect. Rule 3003(c) of the Federal Rules of Bankruptcy Procedure provides that "the court shall fix and for cause shown may extend the time within which the proofs of claim or interest may be filed." Rule 9006(b)(1) further empowers a bankruptcy court to permit a late filing if the

tardiness was the result of excusable neglect. Rules 9006(b)(2) and (3) list specific exceptions and limitations to the scope of Rule 9006(b)(1), but none is applicable to Rule 3003(c).[1] Thus, if the EPA or the NJDEPE could show that its failure to file a timely claim was the result of excusable neglect, the claim would not be time-barred and Eagle–Picher would thus be co-liable with Norpak.

■ In *Pioneer Investment Services v. Brunswick Associates Limited Partnership,* a case arising in this circuit, the Supreme Court held that the excusable neglect exception applies to late filings of proofs of claim in Chapter 11 proceedings. 507 U.S. 380, 381, 113 S.Ct. 1489, 1490–91, 123 L.Ed.2d 74 (1993). The inquiry into whether the neglect is excusable "is at bottom an equitable one, taking account of all the relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. at 1498. Adopting the Ninth Circuit's approach in *Dix v. Johnson,* 95 B.R. 134 (9th Cir.BAP (Cal.) 1988), the *Pioneer* Court listed several factors to be considered, including (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; (4) whether the delay was within the reasonable control of the late party; and (5) whether the late party acted in good faith. *Id.*

Contrary to Norpak's assertions, then, the bar-date set by the bankruptcy court is not an absolute bar to any future claims by the EPA or NJDEPE. If either of those agencies can demonstrate excusable neglect, Rule 9006(b)(1) would permit it to file a late claim. Under those circumstances, Eagle–Picher would continue to be co-liable with Norpak. This court's holding that § 502(e)(1)(B) does not apply to Norpak's claims would subject Eagle–Picher to paying twice: once to Norpak and once to the EPA or NJDEPE. Section 502(e)(1)(B) was designed to avoid exact-

---

1. For example, Rule 9006(b)(2) states that the court may not enlarge the time for taking action under, among others, Rules 1007(d) (requiring the debtor to supply a list of the 20 largest unsecured creditors); 1017(b)(3) (requiring that creditors receive notice of dismissal of proceeding for failure to pay the filing fee); and 2003(a)

(requiring a meeting of creditors). In addition, Rule 9006(b)(3) limits enlargement of the time for taking action under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 8002, and 9033, "only to the extent and under the conditions stated in those rules."

ly this kind of "double-dipping." *See, e.g., Allegheny Int'l,* 126 B.R. at 923.

The bankruptcy court never had the opportunity to examine the *Pioneer/Dix* factors to determine whether a late filing by the EPA might be possible under the excusable neglect exception. Nor did the EPA have any incentive to seek such a filing, because the bankruptcy court had already disallowed Norpak's claim. It is not clear on the present record whether such a late filing should have been allowed or whether the bankruptcy court necessarily made the right decision under then existing circumstances. Nor can either of those questions be answered without an analysis of the *Pioneer/Dix* factors. Thus, it would be inappropriate, *at this time,* for this court to rule that § 502(e)(1)(B) does not apply to Norpak's claims. Instead, this case should be remanded to the bankruptcy court, so that it may conduct the requisite *Pioneer/Dix* analysis.[2]

### B. Whether the Consent Agreement Is Irrelevant to This Appeal

■ The unique nature of bankruptcy makes it possible to appeal a single, discreet issue while the bankruptcy proceedings continue in ways that may dramatically change the face of that issue. This is particularly true in a Chapter 11 proceeding such as the present case. The district court was correct in noting that "there must be a date beyond which further activity or proof cannot be admitted into evidence," but it is important to remember that bankruptcy courts are courts of equity, and that a Chapter 11 proceeding, unlike a Chapter 7 proceeding, is not aimed at accomplishing a prompt closure and liquidation of the debtor's estate. Rather, Chapter 11 "provides for reorganization with the aim of *rehabilitating* the debtor and avoiding forfeitures by creditors." *Pioneer Investment,* 507 U.S. at 389, 113 S.Ct. at 1495 (emphasis added). Consequently, bankruptcy courts "are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the

reorganization." *Id.* (citing *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 527–28, 104 S.Ct. 1188, 1196–97 (1984)).

Given the equitable aim of Chapter 11 reorganization and the unique circumstances of the present case, justice dictates that the bankruptcy court's *Pioneer/Dix* analysis take account of the consent agreement between Eagle–Picher and the EPA. Norpak argues that the agreement is not in the record, and should, therefore, be ignored. Ignoring this vital piece of the Chapter 11 puzzle, however, flies in the face of the Supreme Court's instruction in *Pioneer Investment* that the excusable neglect analysis "tak[e] account of all the relevant circumstances surrounding the [late filing of a claim]." 507 U.S. at 395, 113 S.Ct. at 1498.

Although this is not in the record, the terms of the consent agreement and the circumstances surrounding its negotiation and adoption are bound to be relevant. For example, Eagle–Picher may well have entered into the consent agreement at the behest of its creditors as part of the process of formulating its reorganization plan. If so, the agreement was reached in the context of these bankruptcy proceedings.

■ It is true that this court does not ordinarily consider evidence presented for the first time on appeal. It is within our discretion, however, to depart from this rule when "injustice might otherwise result." *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). In the present case, while it is not appropriate for this Court to consider the substance of the consent agreement, injustice very likely will result unless the bankruptcy court is given the opportunity to consider the consent agreement and the continued viability of claims by the EPA. This case presents an exceptional circumstance in the context of an equitable proceeding. Norpak would have this court ignore the existence of the consent agreement, but to do so "would be inconsistent with this court's own equitable obligations, and its supervisory role in reviewing other courts in equity." *In re AOV Indus-*

---

2. Although the bankruptcy court does not need our help, we do note that the debtor is not prejudiced by the EPA's filing a claim.

*tries, Inc.,* 797 F.2d 1004, 1013 (D.C.Cir.1986) (remanding to the district court for consideration of new evidence not part of the record below). On remand, therefore, the bankruptcy court's *Pioneer/Dix* analysis should take full account of the circumstances surrounding the negotiation and adoption of the consent agreement.

### C. Whether Norpak's Claim is for "Reimbursement and Contribution"

Norpak also challenges the lower court's determinations that its environmental claims are "for reimbursement and contribution" and should therefore be disallowed under § 502(e)(1)(B). Norpak misses the mark on several fronts. Most notably, Norpak's challenge is premised on the assumption that Norpak and Eagle–Picher cannot be co-liable under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 et seq ("CERCLA"), or the New Jersey Spill Compensation and Control Act, N.J. STAT. ANN. §§ 58:10-23.11 et seq. ("the Spill Act"), because the bar date has already passed. As we have explained above, this assumption is unwarranted. This court cannot say whether Norpak and Eagle–Picher will be co-liable under CERCLA or the Spill Act. It is therefore impossible to conclude that Norpak's liability for environmental cleanup costs will be limited to claims under the New Jersey Environmental Cleanup Responsibility Act ("ECRA"). To the extent that Norpak's argument depends upon such a limitation, it must fail.

■ Whether under CERCLA or the Spill Act or some other law, Norpak's claims are for environmental cleanup costs associated with the Blanchard Street property, the very same costs for which Eagle–Picher may turn out to be co-liable. This is precisely the kind of contingent co-liability envisioned by § 502(e)(1)(B). If Norpak and Eagle–Picher are co-liable, then it is irrelevant that Norpak can also concoct an alternative theory on which to premise its claim against Eagle–Picher such as diminution of value of the property due to Eagle–Picher's contamination of that property.

Even assuming, for the sake of argument, that Eagle–Picher and Norpak will not be co-liable under CERCLA or the Spill Act, Norpak's ECRA claim amounts to nothing more than a thinly disguised claim for reimbursement and contribution. Section 502(e)(1)(B) applies only to an "entity that is liable with the debtor on ... the claim of a creditor." Courts have held that " '[t]he phrase "an entity that is liable with the debtor" is broad enough to encompass any type of liability shared with the debtor, *whatever its basis.*' " *In re Pettibone Corporation,* 110 B.R. 837, 848 (Bankr.N.D.Ill.1990) (emphasis added) (quoting *In re Baldwin–United Corp.,* 55 B.R. 885, 890 (Bankr.S.D.Ohio 1985)). Thus, so long as Norpak and Eagle–Picher are both potentially responsible for environmental cleanup costs of the Blanchard Street property, the legal theory underpinning that shared responsibility is irrelevant.

Normally, there is a creditor who can choose to collect the debt from either of the two jointly-liable parties. If one of the parties pays the creditor, he can seek reimbursement from the other party. In the present case, for example, Norpak and Eagle–Picher could be jointly liable under CERCLA or the Spill Act. The creditor, either the EPA or the NJDEPE, could impose clean-up costs on either Norpak or Eagle–Picher. If the EPA or NJDEPE imposes cleanup costs on Norpak, then Norpak will be able to seek reimbursement from Eagle–Picher. This kind of joint liability scenario is common in environmental cleanup cases.

The present case is unusual, however, because Norpak's claim is based not only on potential CERCLA and Spill Act liability, but also on New Jersey common law and the ECRA. Unlike CERCLA and the Spill Act, the ECRA would hold Norpak strictly liable for clean-up costs, but only if Norpak ever tries to sell the property. Under New Jersey common law, Norpak could then seek damages from Eagle–Picher for diminution of the value of the property. The only real difference between this scenario and the more common variety of environmental joint liability is that the NJDEPE will not have the luxury of choosing which of the two parties to pursue. One party, Norpak, will

still bear the burden of the cleanup. That party will still demand that the other party, Eagle–Picher, pay its share. Both parties are responsible for the cleanup costs: Norpak to the NJDEPE, and Eagle–Picher to Norpak. If both parties are responsible for the cleanup costs, then the legal theory behind the shared responsibility is irrelevant. *See In re Baldwin–United Corp.,* 55 B.R. at 890; *In re Pettibone Corporation,* 110 B.R. at 848. Whether we call it "reimbursement" or "damages for diminution in the value of property," the process is the same. To hold otherwise would be to elevate form over substance.

## III.

For these reasons, we AFFIRM the bankruptcy court's holding that Norpak's claim is for "reimbursement and contribution," and REMAND this case to the bankruptcy court for a determination of the continued viability of any claims by the EPA or NJDEPE against Eagle–Picher, taking into account the consent agreement between Eagle–Picher and the EPA.

BOYCE F. MARTIN, Jr., Chief Judge, concurring.

I agree with the majority opinion that Bankruptcy Rule 9006(b)(1) and the holding in *Pioneer Investment Services* make it possible for the Environmental Protection Agency or the New Jersey Department of Environmental Protection and Energy to bring claims against Eagle–Picher even though the bar date for doing so has passed. Therefore, I agree that it would be premature to disallow Norpak's claims at this point, and that Norpak's claims can be viewed as a form of compensation or reimbursement. I write separately, however, to express my concern about an unaddressed issue—namely, the fact that this opinion and *Pioneer Investment Services* could potentially be read to allow corporations or individuals that cause environmental harms to hide behind the shield of a bankruptcy claim to escape responsibility for their lack of sound environmental stewardship. I wish to emphasize my belief that this case and *Pioneer Investment Services* do not allow such evasion.

The majority opinion requires the disallowance of contingent claims against debtors when the debtor and claimant are potentially co-liable to a third party. Debtors could, however, argue that if that third party *does* actually bring a claim against the debtor, the majority opinion still allows the debtor to raise its bankruptcy as a defense. This is, in fact, what Eagle–Picher concedes it plans to do if the Environmental Protection Agency or the New Jersey Department of Environmental Protection and Energy bring a claim against it. In doing so, Eagle–Picher is clearly relying on the hope that Norpak's claims will be disallowed, its bankruptcy defense will be accepted, and it will be able to walk away from the mess it made without bearing any responsibility for it. This cannot be allowed.

To read this case as allowing such a scenario contravenes Congress's clear intention in passing CERCLA. By passing CERCLA, Congress intended to respond efficiently and expeditiously to toxic spills, and to *hold those parties responsible for the release of environmental toxins liable for the costs of the clean-up.* See, e.g., *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2nd Cir.1992). Interpreting *Pioneer Investment Services* or the majority's opinion as allowing polluters to circumvent CERCLA's goals would be tantamount to turning a blind eye to clear Congressional mandate. Such flagrant disregard for legislative intent should not be tolerated.

I do not believe that *Pioneer Investment Services* allows the loophole that Eagle–Picher's argument envisions, and I write separately to emphasize that this case should not be seen as creating one.