# FILED

NOT FOR PUBLICATION

AUG 04 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | AP No. NC-13-1506-DJuKu |
| | ) | |
| CATHERINE JAN KOSTLAN, | ) | Bk. No. 11-30865-HLB |
| DBA CKRT Properties, | ) | |
| DBA Parsimoniuos Design, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DAVID KAPNICK; LINDA KAPNICK, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[1] |
| | ) | |
| E. LYNN SCHOENMANN, Chapter 7 | ) | |
| Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on July 24, 2014
at San Francisco, California

Filed - August 4, 2014

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

Appearances:    Gary M. Kaplan, Esq., of Farella Braun & Martel
                LLP argued for appellants; Katherine D. Ray, Esq.,
                of GOLDBERG, STINNETT, DAVIS & LINCHEY argued for
                appellee.

Before: DUNN, JURY, and KURTZ, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

The appellants, David and Linda Kapnick (together, "Kapnicks"), guaranteed payment of a mortgage loan taken out by the debtor, Catherine Jan Kostlan ("debtor"), to purchase real property located in San Francisco, California ("Property"). Although the debtor defaulted on the mortgage loan, the lender, Bank of America, N.A. ("Bank of America"), has not made a demand on the Kapnicks under the guaranty.

After the debtor filed for bankruptcy relief, the Kapnicks filed a proof of claim in an unknown amount based, in part, on the guaranty.[2] The chapter 7 trustee objected to the claim for a number of reasons, including § 502(e)(1)(B), which provides for the disallowance of certain contingent claims. The bankruptcy court sustained the chapter 7 trustee's objection.

The Kapnicks appeal the bankruptcy court's disallowance of their claim.[3] For the reasons set forth below, we VACATE and REMAND for further proceedings.

## FACTS

The facts appear to be undisputed. In March 2003, the debtor purchased the Property, financing the purchase with an $850,000 loan from First Republic Bank. The bank secured

---

[2] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] The Kapnicks also appeal the bankruptcy court's decision not to estimate their proof of claim under § 502(c)(1). Because we vacate and remand the bankruptcy court's § 502(e)(1)(B) determination, we do not reach the claim estimation issue.

2

repayment of the loan by a deed of trust on the Property. First Republic Bank later assigned the deed of trust to Bank of America.

In May 2003, the Kapnicks executed a continuing guaranty with First Republic Bank ("Continuing Guaranty"). Under the Continuing Guaranty, the Kapnicks promised to pay First Republic Bank any debt owed by the debtor on the mortgage loan. Specifically, the Continuing Guaranty stated:

> To induce [Bank of America] . . . to grant credit and or make financial accommodations to [the debtor] and in consideration thereof of any loans, advances, or financial accommodations heretofore or hereafter granted by [Bank of America] to or for the account of [the debtor], the undersigned [i.e., the Kapnicks] (hereinafter called "Guarantors") jointly and severally unconditionally guarantee and promise to pay [Bank of America] or order, on demand, in lawful money of the United States, any and all indebtedness (as hereinafter defined) of [the debtor] to [Bank of America] under any existing or future agreement or otherwise, and also guarantee the due performance by [the debtor] of all its obligations under all existing and future contracts and agreements with [Bank of America].

The Kapnicks' obligations to First Republic Bank were independent of the debtor's obligations to First Republic Bank.

Seven years later, the debtor executed a guaranty reimbursement agreement ("Reimbursement Agreement") with the Kapnicks. Under the Reimbursement Agreement, for recited consideration of $1,000, the debtor promised to reimburse the Kapnicks for any and all amounts they expended pursuant to the Continuing Guaranty, including any payments made on the mortgage loan or any costs and expenses incurred in connection with it. She further promised to "remain obligated under [the Reimbursement Agreement] for as long as [the Kapnicks] remain[] liable under the [Continuing Guaranty]." In conjunction with the

3

Reimbursement Agreement, the debtor gave the Kapnicks a junior deed of trust on the Property.

The debtor filed her chapter 11 bankruptcy petition on March 4, 2011; her case was converted to chapter 7 on June 7, 2011.[4] E. Lynn Schoenmann initially was appointed as chapter 11 trustee, and later was reappointed as chapter 7 trustee ("Trustee").

Bank of America filed a proof of claim in May 2011 ("Bank of America Claim"), asserting a $957,471.99 secured claim based on the mortgage loan and deed of trust.

The Kapnicks filed a proof of claim in September 2011 ("Kapnick Claim"), asserting a secured claim in an unknown amount based on the Reimbursement Agreement and the junior deed of trust.[5] They contended that the Kapnick Claim included "all

---

[4] As of July 30, 2014, no discharge order has been entered.

[5] The Kapnicks also asserted a $3,570.25 unsecured priority claim for administrative expenses under §§ 503(b)(1) and 507(a)(2), based on amounts the Kapnicks spent for property insurance from May 5, 2011 to November 17, 2011, and for storage fees for the debtor's personal property. The Trustee objected to this portion of the Kapnick Claim as well, contending that this amount was not entitled to administrative expense priority because it did not provide a benefit to the bankruptcy estate. The bankruptcy court indicated at the hearing that it was inclined to sustain the Trustee's objection to the unsecured priority portion of the Kapnick Claim without prejudice, subject to the Kapnicks filing and serving an application for payment of administrative expenses. The bankruptcy court did not specifically refer to the unsecured priority portion of the Kapnick Claim in the Kapnick Claim Order; rather, it merely stated that it was sustaining the Trustee's objection for the reasons stated on the record at the hearing and in its tentative

continue...

4

amounts owed now or in the future by the Debtor for any reimbursement, indemnification, or other obligation of the Debtor pursuant to the [Reimbursement Agreement] and applicable law, including, without limitations, any amounts paid or to be paid by [the Kapnicks] to [Bank of America] with respect to the [mortgage loan]."

Meanwhile, in August 2011, the Trustee moved to abandon the estate's interest in the Property and any of the debtor's personal property located there under § 554 ("Motion to Abandon"). He sought abandonment on the grounds that the Property lacked equity,[6] and any sale thereof might create adverse tax consequences for the bankruptcy estate. When no objections were made to the Motion to Abandon, the bankruptcy court entered an order on September 27, 2011 ("Abandonment Order"), authorizing the Trustee to abandon the Property and the debtor's personal property located there.

In March 2013, the Trustee filed an objection to the Bank of America Claim, requesting that the entire Bank of America Claim be disallowed. He noted that Bank of America had not initiated

---

[5]...continue ruling.

In their opening brief, the Kapnicks do not mention the bankruptcy court's disallowance of that portion of their claim seeking reimbursement of administrative priority expenses. Because they do not raise this issue on appeal in their opening brief, they have waived it. Dilley v. Gunn, 64 F.3d 1365, 1367 (9th Cir. 1995)("Issues not raised in the opening brief usually are deemed waived.").

[6] The Trustee believed the Property lacked equity based on its scheduled value of $850,000, and Bank of America's secured claim of $957,371.99.

5

any foreclosure proceedings to enforce its secured claim.[7] The Trustee challenged the Bank of America Claim on the ground that it was unenforceable against the bankruptcy estate because the Property was no longer part of the bankruptcy estate, having been abandoned under § 554, among other grounds.

Bank of America never responded to the Trustee's objection to its proof of claim. Consequently, the bankruptcy court entered an order ("Bank of America Claim Order") sustaining the Trustee's objection.

The Trustee also filed an objection to the Kapnick Claim seeking disallowance of the entire Kapnick Claim on various grounds.[8] Among them, he sought disallowance of the Kapnick

---

[7] Bank of America did not move for relief from stay as to the Property at any time during the debtor's bankruptcy case.

[8] The Trustee argued that the Reimbursement Agreement was unenforceable under California law because: 1) it was void as an illegal contract, as it required the debtor to waive her anti-deficiency protections; 2) it was unconscionable in unreasonably favoring the Kapnicks by requiring the debtor to waive any defenses she might have; and 3) the debtor's waiver of her defenses was not knowing and intelligent.
The bankruptcy court did not base its ruling on any of the Trustee's state law arguments. In fact, at the September 12, 2013 hearing on the Trustee's objection to the Kapnick Claim, the bankruptcy court explained that it was "not sustaining the objection on any grounds other than the fact that [it] believe[d] that the claim [was] contingent." Tr. of Sept. 12, 2013 hr'g, 3:18-20. The bankruptcy court stated that it was "not finding that the contract [was] illegal . . . or that the contract [was] unconscionable." Tr. of Sept. 12, 2013 hr'g, 3:17-18.
On appeal, neither the Trustee nor the Kapnicks address the state law grounds asserted by the Trustee in his objection to the Kapnick Claim. We therefore decline to address them further in this disposition.

6

Claim under § 502(e)(1)(B).

The Trustee argued that § 502(e)(1)(B) provided for mandatory disallowance of contingent guaranty claims when the following three circumstances were present: 1) the claim was contingent; 2) the claim was for reimbursement or contribution; and 3) the claimant was co-liable with the debtor with respect to the claim. He alleged that all three circumstances were present in that: 1) the Kapnicks' claim was contingent because they had not yet paid any amounts to Bank of America under the Continuing Guaranty and might not have to pay if Bank of America's debt was satisfied through enforcement against the Property; 2) the Kapnicks' claim was based on a guaranty, which, by its nature, was a claim for contribution or reimbursement; and 3) the Kapnicks and the debtor were co-liable to Bank of America on the mortgage loan in that the debtor had direct liability on the mortgage loan as the primary obligor and the Kapnicks had secondary liability on the mortgage loan as guarantors under the Continuing Guaranty.

The Kapnicks countered the Trustee's objection, arguing that the Trustee failed to provide any evidence to support it. They also contended that § 502(e)(1)(B) did not apply because there was no possibility of duplicate liability now that the Bank of America Claim had been disallowed. Further, if the Kapnicks satisfied their obligations under the Continuing Guaranty, which they anticipated doing, disallowance of the Kapnick Claim would be pointless. If the bankruptcy court were inclined to sustain the Trustee's objection, the Kapnicks asked that the bankruptcy court estimate their claim under § 502(c)(1).

7

In his reply, the Trustee stressed that the Kapnicks' reimbursement claim remained contingent and unliquidated. The Kapnicks did not present any evidence showing that their reimbursement claim would ever mature or be liquidated. In fact, the Kapnicks did not specify a dollar amount for the secured portion of their claim. Their claim was entirely contingent on the Kapnicks' payment to Bank of America for any deficiency resulting from the debtor's default on the mortgage loan and Bank of America's foreclosure sale, which had not occurred and had not even been noticed.

He noted that the Kapnicks bore the burden of proof to establish the validity and amount of their claim, but they failed to do so. The Trustee emphasized that the claim of co-debtors, such as guarantors like the Kapnicks, is allowed only to the extent that the co-debtors actually paid the third party's claim. However, the Kapnicks had not provided any evidence that they had paid Bank of America under the Continuing Guaranty or that Bank of America was seeking to enforce the Continuing Guaranty.

The Trustee advised the bankruptcy court that he did not object to temporary disallowance of the Kapnick Claim, subject to reconsideration under § 502(j).

The bankruptcy court scheduled a hearing on the Trustee's objection to the Kapnick Claim for September 12, 2013. The day before the hearing, the bankruptcy court issued a tentative ruling indicating that it was inclined to sustain the Trustee's objection to the Kapnick Claim under § 502(e)(1)(B), subject to reconsideration under § 502(j), if and when the Kapnick Claim became noncontingent.

At the hearing, the bankruptcy court explained the basis for its tentative ruling: it reasoned that § 502(e)(1)(B) required denial of the Kapnick Claim because the Kapnick Claim was contingent. The bankruptcy court stressed that it was "not finding that the contract [was] illegal . . . [and] that the contract [was] unconscionable." Tr. of Sept. 12, 2013 hr'g, 3:17-18. It was "not sustaining the [Trustee's] objection on any grounds other than the fact that [it] believe[d] that the claim [was] contingent. And [it] didn't see in the record . . . before [it] any dispute as to the contingent nature of [the Kapnick Claim]." Tr. of Sept. 12, 2013 hr'g, 3:18-22.

Counsel for the Kapnicks "agree[d] that there's not evidence in the record on this issue one way or the other at this point." Tr. of Sept. 12, 2013 hr'g, 3:23-25. He insisted that the bankruptcy court needed to hold a further hearing to receive evidence on the issue as to whether the Kapnick Claim was contingent. Counsel for the Kapnicks noted that the only evidence the bankruptcy court had was the Kapnick Claim itself.

He conceded that at the time the Kapnick Claim was filed, it was "a bit of a contingent . . . ." Tr. of Sept. 12, 2013 hr'g, 4:4. But, he pointed out that, in the Motion to Abandon, the Trustee represented that there was no equity in the Property. If that were true, he argued, then the Kapnicks apparently would be liable under the Continuing Guaranty because the value of the Property was insufficient to satisfy the debt owed by the debtor to Bank of America. Counsel for the Kapnicks noted that, while some of these circumstances "[were] hypothetical," the amount of the Kapnick Claim likely would be substantial, given that the

9

Property "[was] underwater and [it would] likely be sold for even less than the market value at a foreclosure sale." Tr. of Sept. 12, 2013 hr'g, 5:3-7.

Upon questioning by the bankruptcy court, counsel for the Kapnicks admitted that no foreclosure proceedings had been commenced, to his knowledge, and that Bank of America had made no demand on the Continuing Guaranty. He reported that it was "mostly true" that the Kapnicks had not paid anything toward the Continuing Guaranty, noting that they nonetheless had maintained insurance on the Property as required under the Continuing Guaranty. Tr. of Sept. 12, 2013 hr'g, 5:14-18. Counsel for the Kapnicks also informed the bankruptcy court that the debtor had not made any payments on the mortgage loan since the petition date.

Quoting § 502(e)(1)(B), the bankruptcy court then asked him whether the Kapnick Claim was not a "'claim for reimbursement of an entity that [had] secured the claim of a creditor,'" as set forth in the statute. Tr. of Sept. 12, 2013 hr'g, 5:23-25, 6:1-2. Counsel for the Kapnicks agreed with this characterization.

The bankruptcy court noted that counsel for the Kapnicks conceded in his papers that the Kapnick Claim was contingent. It also pointed out that the Kapnicks had "plenty of time to move for reconsideration of an order disallowing [their] claims [sic] should it become noncontingent, which exactly [is] what [§] 502(j) provides for." Tr. of Sept. 12, 2013 hr'g, 7:18-21. It further advised counsel for the Kapnicks that if called upon to do so, it would estimate the Kapnick Claim at zero because it was

10

contingent.

Counsel for the Kapnicks disagreed, contending that the bankruptcy court needed to take into account "the likelihood of a contingency occurring coupled with the anticipated damages if it did occur." Tr. of Sept. 12, 2013 hr'g, 8:3-5. He insisted that if evidence were presented on the issue, the amount of the Kapnick Claim would not be zero.

In the end, the bankruptcy court took the matter under submission. A few weeks later, on September 30, 2013, the bankruptcy court entered an order ("Kapnick Claim Order"), sustaining the Trustee's objection to the Kapnick Claim for the reasons stated on the record at the hearing and in its tentative ruling. Appellants' ER, Tab 13 at 188. Notably, since the bankruptcy court entered the Kapnick Claim Order, as of July 11, 2014, the Kapnicks have not moved for reconsideration of disallowance of the Kapnick Claim under § 502(j).

The Kapnicks timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court err in disallowing the Kapnick Claim?

///

///

11

**STANDARDS OF REVIEW**

We review a bankruptcy court's decision to disallow a claim for an abuse of discretion. See U.S. v. Berger (In re Tanaka Bros. Farms, Inc.), 36 F.3d 996, 998 (10th Cir. 1994)("The decision of the bankruptcy judge to disallow the amended proof of claim is reviewable under an abuse of discretion standard." (citation omitted)); Bitters v. Networks Elec. Corp. (In re Networks Elec. Corp.), 195 B.R. 92, 96 (9th Cir. BAP 1996). We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc). First, we "determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested." Id. Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard. Id. at 1252 & n.20. A bankruptcy court abuses its discretion if it applied the wrong legal standard or its factual findings were illogical, implausible or without support in the record. Trafficschool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

**DISCUSSION**

Section 502(e)(1)(B) provides, in relevant part:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor to the extent that . . . such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution . . . .

Under section 502(e)(1)(B), "[a] claim will be disallowed only if (1) the claim is for reimbursement or contribution;

12

(2) the party asserting the claim is liable with the debtor on the claim of a creditor; and (3) the claim is contingent at the time of allowance or disallowance." Dant & Russell, Inc. v. Burlington N.R.R. Co. (In re Dant & Russell, Inc.), 951 F.2d 246, 248 (9th Cir. 1991). The party seeking disallowance of the claim must show all three elements. Norpak v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 131 F.3d 1185, 1187-88 (citing Dant & Russell, Inc., 951 F.2d at 248 (9th Cir. 1991)).

The Kapnicks do not challenge the first requirement; the Kapnick Claim clearly is for reimbursement. Moreover, counsel for the Kapnicks agreed with the bankruptcy court at the hearing that the Kapnick Claim was a claim for reimbursement. They also do not challenge the third requirement. And even if the Kapnicks did contest the bankruptcy court's determination on the contingent nature of the claim, we cannot conclude that the bankruptcy court clearly erred in its determination. The claim still remains contingent as Bank of America still has not made a demand for payment on the Kapnicks.

Instead, the Kapnicks seek to set aside the bankruptcy court's ruling by focusing on the second requirement, co-liability. They contend that, under Dant & Russell, Inc., a determination on the second requirement is central to disallowing a claim under § 502(e)(1)(B). Specifically, the Kapnicks argue that their claim is not subject to disallowance under § 502(e)(1)(B) because co-liability no longer exists given the earlier disallowance of the Bank of America Claim.

The Kapnicks' argument that disallowance of the Bank of America Claim eliminated their co-liability with the debtor is

13

not supported by any authority and makes no sense. Disallowance of the claim by default precludes Bank of America from participating in any distribution from the debtor's bankruptcy estate, but it does not establish anything regarding liability or co-liability on the mortgage loan debt. While the debtor ultimately may receive a discharge in her bankruptcy case, the Kapnicks are not in bankruptcy, and their obligation under the Continuing Guaranty (if any) will not be discharged.

However, the problem here is that the bankruptcy court did not make any finding as to co-liability. Nothing in the record, including the Kapnick Claim Order, indicates that the bankruptcy court made such a finding. Accordingly, we must vacate and remand for the bankruptcy court to make a co-liability determination as a required element under § 502(e)(1)(B).

## CONCLUSION

For the foregoing reasons, we VACATE and REMAND for further proceedings consistent with this disposition.

14